COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 MICHAEL ROMERO,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00074-CR
  
                          Appeal from
  
 409th District
 Court
  
 of El Paso County,
 Texas
  
 (TC # 20080D04785)
 
 
 
 
  
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

Michael Romero is appealing his convictions of murder (Count I) and
engaging in organized criminal activity (Counts II and III).  We affirm.

FACTUAL SUMMARY

            Valentin Ray Rodriguez and several
friends, including Blake Klimasara, David Medina, Rolando Granado, Michael Maldonado,
Michael Bocanegra, and John Gutierrez, attended a party at the home of
Alexander Johnson.  Klimasara estimated
that thirty-five people were at the party and he did not know all of them.  Appellant, who is a member of the criminal
street gang, the Crips, went to the party with Shaka King and several women.  Other gang members were in attendance,
including Marcus White, Jory Babers, Antoine Baker, and Jerome “Swat”
Saunders.  These individuals are either members
of the Crips or Hated by Many, which is a subset of the Crips.  Michael Maldonado testified that several
males at the party were throwing the Crips “gang sign.”  

After they had been at the party for about an hour, Rodriguez saw Marcus
White kissing Aileen Favela, who is the girlfriend of a close friend, so he
pulled her aside and said something to her. 
She asked Rodriguez not to tell her boyfriend.  Rodriguez then went into the restroom.  White was upset and began telling his friends
that Rodriguez was a “cock block.” 
Klimasara explained that the term is used when an individual interferes
with a guy’s chances of picking up a girl. 
When Rodriguez came out of the restroom, White confronted him and both
White and Appellant started calling him a “cock block.”  With several people crowded around, White and
Rodriguez began shouting at each other and then White and his friends began
pushing Rodriguez.  Antoine Baker
testified that he was the first person to punch Rodriguez.  Appellant then struck Rodriguez in the side
of the head with a fist.  White joined
Baker and Appellant in punching him.  Medina
began pushing Rodriguez toward the front door while attempting to block the
punches thrown by the group of men chasing them.  Once outside, Appellant, White, and the others
began assaulting Rodriguez and he fell or was pushed to the ground.  Some witnesses stated that White punched
Rodriguez in the face and he fell, striking his head on the sidewalk.  While Rodriguez was on the ground, the group
continued to kick and stomp him until Johnson got in the middle of the group
and began pushing people away.  Witnesses
identified Appellant as one of the people who kicked Rodriguez in the head and
torso while he was on the ground.  After
Johnson stopped the assault, Klimasara went over to Rodriguez and saw that he
was unconscious and bleeding from the nose and the back of the head.  Medina, Maldonado, and Bocanegra carried Rodriguez
to a car and they left.  Appellant found
one of Rodriguez’s shoes in the front yard and held it up while laughing,
stating, “[W]e got the shoe of the guy who got beat up.”  When they went back inside of the house,
Appellant was waving the shoe and stating that he “whooped his ass.”  

Rodriguez’s friends took him back to his apartment rather than taking him
to a hospital.  Rodriguez did not regain
consciousness and his friends found him unresponsive and not breathing the
following morning.  Emergency medical
personnel arrived at the scene and performed CPR but Rodriguez was pronounced
dead at the scene.  

Dr. Paul Shrode, the Chief Medical Examiner for El Paso County, performed
the autopsy.  The external examination
showed bruising and abrasions on the face, neck, and back.  The bruising was consistent with multiple
assailants punching, kicking, and stomping the victim.  The left eye was swollen shut and there was
an abrasion on the right side of the face. 
Dr. Shrode also found two contusions on the back of the head with the
larger one on the occipital region.  Just
beneath the large abrasion, Dr. Shrode discovered a large skull fracture.  When Dr. Shrode examined the brain, he found multiple
impact sites and blunt force trauma consistent with the victim’s head receiving
multiple blows by being punched, kicked, or stomped.  The examination of the brain also revealed subarachnoid
hemorrhages.  In Dr. Shrode’s opinion,
the skull fracture was consistent with Rodriguez falling and striking his head
on a hard surface.  

The
internal examination also revealed that Rodriguez had suffered significant
trauma to the atlanto occipital joint which is where the cervical spine joins
the skull.  This type of injury could
have been caused by the victim being kicked in the head.  Bruising was also found in the muscles of the
neck consistent with the victim being kicked or stomped on the neck.  During the examination of the internal
organs, Dr. Shrode discovered that the lungs and heart had been bruised during
the assault.  He described the injuries
to one of the lungs as severe trauma. 
Dr.  Shrode testified that the injuries to the skull, brain,
atlanto occipital joint, heart, and lungs constituted serious bodily injury
which created a risk of death.  With
respect to cause of death, he explained that in forensic pathology, there are
two types of causes of death:  immediate
cause of death and proximate cause of death. 
The proximate cause of death is the thing that put it all in motion
which in this case, is the blow to the head which caused the skull fracture and
the brain injury.  The immediate cause of
death was that Rodriguez’s heart stopped beating as a result of the brain
injury.  In his opinion, the main cause
of death was the blunt force trauma to the head but the injuries to the lungs
and heart could have resulted in death if not for the brain injury.  

            The jury found Appellant guilty of
murder (Count I) and engaging in organized criminal activity (Counts II and
III) as alleged in the indictment.  With
respect to Count I, the jury assessed Appellant’s punishment at imprisonment
for a term of fifteen years and a fine of $10,000.  As to Counts II and III, the jury assessed
Appellant’s punishment at imprisonment for a term of ten years, probated for
ten years. 

SUFFICIENCY OF THE EVIDENCE

            In Point of Error One, Appellant
challenges the legal and factual sufficiency of the evidence supporting his
convictions.  Approximately six months
before Appellant filed his brief, the Court of Criminal Appeals abandoned
factual sufficiency review in those cases where the burden of proof is beyond a
reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding
no meaningful distinction between the legal and factual sufficiency standards
and no justification for retaining both standards, therefore overruling the
factual sufficiency review adopted in Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)).  The Court determined that the legal
sufficiency standard articulated in Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979),
is the only standard a reviewing court applies in determining whether the
evidence is sufficient to support a conviction. Brooks, 323 S.W.3d at 894-95.  Therefore, in accordance with Brooks, we will review Appellant’s sufficiency
claims under the Jackson
legal-sufficiency standard and determine whether the evidence is sufficient to
support each challenged element of the criminal offense beyond a reasonable
doubt.  See Brooks, 323 S.W.3d 894-95, citing
Jackson, 443 U.S. at 319, 99 S.Ct. 2789.

Under
the Jackson standard, a reviewing
court must consider all of the evidence in the light most favorable to the
verdict and in doing so determine whether a rational justification exists for
the jury’s finding of guilt beyond a reasonable doubt.  Brooks,
323 S.W.3d at 894-95, citing Jackson,
443 U.S. at 319, 99 S.Ct. at 2789.  As
the trier of fact, the jury is the sole judge as to the weight and credibility
of witness testimony, and therefore, on appeal we must give deference to the
jury’s determinations.  Brooks, 323 S.W.3d at 894-95.  If the record contains conflicting inferences,
we must presume the jury resolved such facts in favor of the verdict and defer
to that resolution.  Id.  On appeal, we serve only
to ensure the jury reached a rational verdict, and we may not reevaluate the
weight and credibility of the evidence produced at trial and in so doing
substitute our judgment for that of the fact finder.  King v.
State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).  In our review, we consider both direct and
circumstantial evidence and all reasonable inferences that may be drawn from
the evidence.  Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).  The standard of review as to the sufficiency
of the evidence is the same for both direct and circumstantial evidence cases.  Id.;
Arzaga v. State, 86 S.W.3d 767, 777
(Tex.App.--El Paso 2002, no pet.).  

Count I - An Act Clearly Dangerous to Human
Life

            Appellant first argues that the
evidence is insufficient to prove beyond a reasonable doubt that he committed
an act clearly dangerous to human life.  Count
I of the indictment charged Appellant with murder under Section 19.02(b)(2) of
the Texas Penal Code and included six paragraphs alleging different manner and
means (Paragraphs A through F).  See Tex.Penal
Code Ann. § 19.02(b)(2)(West 2011). 
Paragraph A alleged that Appellant, with intent to cause serious bodily
injury to Valentin Ray Rodriguez, committed an act clearly dangerous to human
life, to-wit:  striking Rodriguez about
the body and head with Appellant’s hand and kicking Rodriguez about the body
and head with Appellant’s foot.[1]  Paragraphs B through F alleged that Appellant
committed an act clearly dangerous to human life by:  chasing and assaulting Rodriguez in concert
with other individuals (Paragraph B); striking Rodriguez about the head with
the hand of the Appellant (Paragraph C); striking Rodriguez about the body with
the hand of the Appellant (Paragraph D); kicking Rodriguez about the head with
the foot of the Appellant (Paragraph E); and kicking Rodriguez about the body
with the foot of the Appellant (Paragraph F). 
The court’s charge included an instruction on the law of parties and permitted
the jury to find Appellant guilty of murder as the primary actor or as a
party.  The jury found Appellant guilty
of Count I as charged in the indictment. 


            In his brief, Appellant challenges
the sufficiency of the evidence supporting his conviction of Count I on the
ground that the State failed to prove that he committed an act clearly dangerous
to human life which caused Rodriguez’s death. 
Appellant argues that it was Marcus White who struck Rodriguez causing
him to fall and strike his head on the sidewalk and that was the injury which
resulted in Rodriguez’s death.  Appellant
does not challenge any other elements of Count I, such as identity or intent to
cause serious bodily injury, and he does not address the parties theory at all.  We begin by addressing the law of parties.

            A person is criminally responsible
as a party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.  Tex.Penal
Code Ann. § 7.01(a)(West 2011).  The
trial court’s charge instructed the jury that a person is criminally
responsible for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.  See Tex.Penal Code Ann. §
7.02(a)(2)(West 2011).  The charge also
instructed the jury that mere presence at the scene of an offense will not make
a person a party to an offense.  The
application paragraph of the court’s charge does not apply the law of parties
to the facts of the case but we must measure the sufficiency of the evidence by
a hypothetically correct jury charge.  See Adames v. State, 353 S.W.3d 854,
861-62 (Tex.Crim.App. 2011).  Applying
the law of parties to the offense of murder under Section 19.02(b)(2) and to
the evidence as it relates to Paragraph A of Count I, Appellant is criminally
responsible as a party to this offense if, acting with the intent to promote or
assist in the commission of the murder of Rodriguez by Marcus White, Antoine
Baker, James Templeton, or Jory Babers, Appellant solicited, encouraged, directed,
aided, or attempted to aid White to commit the murder, and White, Baker,
Templeton, or Babers, acting with the intent to cause serious bodily injury to
Rodriguez, committed an act clearly dangerous to human life, to-wit, striking
Rodriguez about the head and body with the hand of White, Baker, Templeton, or
Babers, and kicking or stomping Rodriguez about the head and body with the foot
of White, Baker, Templeton, or Babers, that caused Rodriguez’s death.  In determining the sufficiency of the
evidence under the law of parties, this Court may look to events occurring
before, during, and after the offense, and may rely on actions of the defendant
that show an understanding and common design to commit the offense.  King,
29 S.W.3d at 564.

            The evidence showed that Appellant instigated
the assault which led to Rodriguez’s death. 
James Templeton testified that he was in the backyard with Antoine Baker
and Jory Babers when Appellant approached them and talked about “violating someone
because they didn’t know their Crip knowledge.” 
Templeton explained that “violating somebody” meant hitting someone who
disrespected you.  Templeton said that
Romero and the others went inside and about a minute later the “ruckus” started
inside of the house.  Appellant further
instigated the assault by yelling “cock blocker” at Rodriguez.  He participated in the initial assault on
Rodriguez by striking him in the head with his fist while Rodriguez and White
were yelling at each other in the house. 
Appellant, along with White and the other assailants, chased Rodriguez
out of the house and they continued to assault him in the front yard by
punching and kicking him.  At least one
witness said that Appellant pushed Rodriguez to the ground and the group,
including White, Baker, Templeton, and Babers, surrounded Rodriguez and began
punching, kicking, and stomping his head and body.  Other witnesses said that White struck
Rodriguez’s head with his fist and Rodriguez fell and struck his head on the
sidewalk knocking him unconscious.  The
group, including White and Romero, then began violently stomping and kicking
Rodriguez’s head and body and the attack continued for one to two minutes until
other people pulled the assailants away from Rodriguez.  The evidence also showed that Appellant
picked up Rodriguez’s shoe after the assault and held it up like a trophy while
laughing.  Appellant also told people
after the assault that they had “whooped his ass.”  A rational trier of fact could have
reasonably concluded that Appellant acted with the intent to promote and assist
in the commission of the murder under Section 19.02(b)(2) and he directed, encouraged,
and aided the co-defendants’ commission of murder by telling the co-defendants
they were going to “violate” Rodriguez, yelling at Rodriguez and making one of
the initial punches to Rodriguez’s head while he and White were shouting at
each other, chasing Rodriguez outside, pushing him to the ground, kicking him
while he was on the ground, and bragging about the assault after Rodriguez’s
friends dragged him away, unconscious and badly injured.  See Johnson
v. State, No. 05-04-00971-CR, 2006 WL 401127, at *3 (Tex.App.--Dallas, Feb.
22, 2006, pet. ref’d)(not designated for publication)(evidence sufficient to
support defendant’s murder conviction as a party where he instigated the fight
with the victim and participated in assault on the victim with co-defendant).  Given our conclusion that the evidence is
legally sufficient to support Appellant’s conviction as a party, it is
unnecessary to address whether it is also sufficient to support his conviction
as a principal or primary actor.  Issue
One is overruled.

Counts II and III

            Appellant next argues that the
evidence is insufficient to support his convictions of engaging in organized
criminal activity.  We understand him to
argue that the State failed to prove beyond a reasonable doubt that he
committed the offense of aggravated assault with intent to participate as a
member of the criminal street gang, Hated by Many.  

            Section 71.02(a)(1) of the Penal
Code provides, in relevant part, that a person commits an offense if, with
intent to establish, maintain, or participate as a member of a criminal street
gang, the person commits or conspires to commit one or more of the listed
offenses, including aggravated assault.  Tex.Penal Code Ann. § 71.02(a)(1)(West Supp.
2012).  A criminal street gang is defined
to mean three or more persons having a common identifying sign or symbol or an
identifiable leadership who continuously or regularly associate in the
commission of criminal activities.  Tex.Penal Code Ann. § 71.01(d)(West 2011).  Count II of the indictment alleged that
Appellant, with intent to participate as a member of a criminal street gang,
Hated by Many, committed the offense of aggravated assault by causing serious
bodily injury to Rodriguez.  See Tex.Penal
Code Ann. § 22.02(a)(1)(West 2011). 
The application paragraph of the court’s charge authorized the jury to
convict Appellant if it found that he committed the offense of aggravated
assault with intent to participate as a member of Hated by Many, Hoover Street,
and/or the Crips.  Count III alleged that
Appellant, with intent to participate as a member of a criminal street gang,
Hated by Many, committed the offense of aggravated assault by using or
exhibiting a deadly weapon during the commission of the assault and causing
bodily injury to Rodriguez.  See Tex.Penal
Code Ann. § 22.02(a)(2).  The
application paragraph permitted the jury to find Appellant guilty of Count III
if it found that he committed the offense of aggravated assault with intent to
participate as a member of Hated by Many, Hoover Street, and/or the Crips.

            We do not understand Appellant to
argue that the State failed to prove that he committed the offense of
aggravated assault as alleged in Counts II and III.[2]  We have construed his brief as asserting that
the evidence is insufficient to prove that he acted with the requisite specific
intent to participate as a member of the Crips. 
Intent may be inferred from circumstantial evidence such as acts, words,
and the conduct of the appellant.  Guevara v. State, 152 S.W.3d 45, 50
(Tex.Crim.App. 2004).  There is
substantial evidence showing that Romero is a member of the Crips, a criminal
street gang, and he associates with the criminal street gang, Hated by
Many.  Committing assaults is one of the criminal
activities engaged in by the Crips.  Appellant
committed the offense with other gang members, White (Hated by Many), Baker
(Crips and Hated by Many), and Babers (Crips and Hated by Many).  Templeton testified that just a few minutes before
the assault, Appellant approached Crips members, Babers and Baker, and said
they needed to “violate” someone who did not have Crip knowledge.  The group excluded Templeton from the
remainder of the conversation because he was not a Crip.  After the conversation concluded, Appellant,
Babers, and Baker went inside and moments later the fight started inside of the
house.  Taken in the light most favorable
to the verdict, the evidence is sufficient to permit a rational trier of fact
to find beyond a reasonable doubt that Appellant committed the aggravated assault
of Rodriguez with intent to participate as a member of a criminal street gang.  Issue One is overruled.

EXTRANEOUS OFFENSES

            In Issue Two, Appellant argues that
the trial court abused its discretion by admitting during the guilt-innocence
stage of trial two extraneous offenses because he was not directly involved in
either offense.  Appellant argues that
the probative value of this evidence was substantially outweighed by the danger
of unfair prejudice.  See Tex.R.Evid.
403.

Relevant Law and Standard of Review

Evidence
of other crimes, wrongs, or acts is not admissible to prove the character of a
person to show action in conformity therewith.  Tex.R.Evid.
404(b).  But it may be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, or knowledge. Id.  For evidence of other crimes to be admissible,
it must be relevant for a purpose other than to show the character of a person
and that he acted in conformity with it.  See Tex.R.Evid. 404(b).

Even when the
extraneous offense evidence is relevant for a non-character conformity purpose,
it may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice.  See Tex.R.Evid.
403.  In conducting a Rule 403 balancing
test, the trial court must balance:  (1)
the inherent probative value of the evidence and (2) the State’s need for that
evidence, against any tendency of the evidence to (3) suggest decision on an
improper basis, (4) confuse or distract the jury from the main issues, or (5)
be given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation of
the evidence will consume an inordinate amount of time or be needlessly
cumulative.  See Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex.Crim.App.
2006).  

We
review the trial court’s admission of extraneous offense evidence for an abuse
of discretion.  De La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); Prible v. State, 175 S.W.3d 724, 731
(Tex.Crim.App. 2005).  If the trial court’s
ruling is within the zone of reasonable disagreement, there is no abuse of
discretion.  Prible, 175 S.W.3d at 731.  A
trial court’s ruling on the admissibility of an extraneous offense is generally
within this zone if the evidence shows that (1) an extraneous transaction is
relevant to a material, non-propensity issue, and (2) the probative value of
that evidence is not substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading of the jury.  De La
Paz, 279 S.W.3d at 344.

The 2007 Drive-by Shooting

            Roynisha Vandiver, the sister of
Antoine Baker, testified that in November of 2007, she was “jumped” by several
members of a rival gang, the Bloods, including Travell Gomez.  Vandiver and several other members of the Crips
and HBM, including Appellant, Baker, and White, went to confront them but Gomez
and his brothers came out of the house carrying bats.  Vandiver’s group fled.  Afterwards, Appellant and the others talked
about getting a gun to “handle business.” 
“Squeaky” Andre Harris gave Appellant a handgun.  Appellant loaded it, cocked it, wiped off his
prints, and handed it to Baker. 
Appellant and Squeaky stayed at Vandiver’s house while Vandiver, Baker, and
two other individuals drove back to Travell Gomez’s house.  Baker got out of the car, fired three or more
shots at the house, and then fled.  Vandiver
was arrested a short time later.  

            We will begin by examining the
probative value of the evidence and the State’s need for it.  In connection with Counts 2 and 3, the State
had the burden to prove beyond a reasonable doubt that Appellant acted with
intent to participate as a member of a criminal street gang when he committed
the offense of aggravated assault.  To
carry its burden, the State was required to show that Appellant and his
companions had a common identifying sign or symbol or an identifiable leadership
and they “continuously or regularly associate in the commission of criminal
activities.”  Tex.Penal Code Ann. § 71.01(d).  Consequently, evidence of Appellant’s gang
membership and some extraneous offenses would be not only relevant, but
essential to meet the State’s burden of proof. 
See Hernandez v. State, 52
S.W.3d 268, 282 (Tex.App.--Corpus Christi 2001, no pet.)(evidence of
defendant’s gang-related activities was admissible to prove defendant was
member of criminal street gang and regularly engaged in criminal activity, as
required for conviction of engaging in organized criminal activity).  Appellant argues that the evidence does not
have any probative value because he was not directly involved in the drive-by
shooting.  In Jackson v. State, 314 S.W.3d 118 (Tex.App.--Houston [1st Dist.]
2010, no pet.), the First Court of Appeals addressed the admissibility of
gang-related extraneous offense evidence in a prosecution for organized
criminal activity.  The court of appeals
noted that specific evidence regarding prior offenses can be probative of the
defendant’s intent to participate in organized criminal activity provided that
the evidence shows the defendant was “involved” in the prior offenses.  Id.,
314 S.W.3d at 127-28.  The court held
that evidence of two prior gang-related offenses was not probative of the
defendant’s intent because he was not involved in the prior offenses.  Id.
at 128.  In this case, there is evidence showing
that Appellant acted as a party in the 2007 drive-by shooting in that he
participated in the discussions about getting a gun to use against the rival
gang members, and after Harris gave them the gun, Appellant loaded it, cocked
it, wiped off his fingerprints, and handed it to Baker.  This certainly constitutes some evidence, if
believed by the jury, that Appellant acted with intent to promote or assist the
commission of the offense, and he directed, encouraged, aided, or attempted to
aid Baker’s commission of the offense. 
We conclude that the evidence is probative of Appellant’s intent to
participate as a member of a criminal street gang.

The
State had a considerable need for the extraneous offense evidence because it
was required to prove that Appellant committed the aggravated assault with
intent to participate as a member of a criminal street gang.  The intent element was hotly contested at
trial because Appellant asserted that the aggravated assault and murder of
Rodriguez was not gang-related at all but was simply an argument over a woman
that escalated into a fight.  Vandiver’s
testimony showed that the Crips and HBM members had previously assaulted
someone who the gang members believed had wronged one of the gang members.  It was the State’s theory that the gang
members assaulted Rodriguez in retaliation for him disrespecting White by
interfering with his advances on Aileen Favela. 
With respect to the tendency of the evidence to suggest decision on an
improper basis, the trial court instructed the jury that it could not consider
the extraneous offenses unless it found beyond a reasonable doubt that he
participated in the extraneous offenses, and even then, it could consider the
evidence only in determining whether Appellant intended to participate as a
member of a criminal street gang as alleged in Counts II and III of the
indictment.  We presume the jury followed
the instructions of the trial court.  See Kirsch v. State, 306 S.W.3d 738, 748
(Tex.Crim.App. 2010).  The presumption is
rebuttable, but the appellant must rebut the presumption by pointing to
evidence that the jury failed to follow the trial court’s instructions.  Thrift
v. State, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005).  Appellant has failed to rebut the
presumption.  There is no evidence in the
record from which it can be concluded that the extraneous offenses would
confuse or distract the jury from the main issues or that the jury would give
the evidence undue weight.  Finally, Appellant
contends that the presentation of the evidence took a “substantial amount of
time.”  The State’s case-in-chief began
on February 1, 2010 and the parties gave their closing arguments on February
10, 2010.  The guilt-innocence phase of
trial, not including the defense’s witnesses, voir dire or closing arguments,
is recorded on seven volumes of the reporter’s record and consists of
approximately 1,492 pages.  Vandiver’s
direct examination about the extraneous offense is contained on nineteen pages
of the reporter’s record.  Defense
counsel engaged in a detailed cross-examination of Vandiver but it did not
focus exclusively on the extraneous offense. 
The trial court could have concluded that Vandiver’s testimony, in the
context of the entire trial, consumed a relatively small amount of time and was
not cumulative.  The trial court acted within
its discretion by concluding that the probative value of the extraneous offense
was not substantially outweighed by the danger of unfair prejudice. 

Retaliatory Assault of Templeton

            The State presented evidence that
Appellant, while in jail, spoke to Shaka King and gave him the names of
prospective witnesses.  Appellant
instructed King to tell those witnesses that he had not done anything.  In another telephone call, Appellant said that
he knew who had snitched on him because he had seen the videotaped
statements.  After the jury had been
selected, members of HBM assaulted James Templeton, a co-defendant who had
given a videotaped statement.  Templeton
suffered serious injuries during the assault, including fractures of the jaw,
cheek, and orbital socket.  One of the people
who participated in the assault of Templeton told him some guys wanted to “beat
[his] ass” for snitching on Marcus White and “everyone else.”  Templeton testified that he had been warned
by HBM members to not testify in any of these cases, but Appellant had not
personally warned him.  

            While the evidence of Appellant’s
involvement in the assault on Templeton is not overwhelming, Appellant’s
statement that he knew who had snitched on him because he had seen the
videotaped statements and his instructions to King to tell the witnesses that
he had not done anything, when combined with the warnings Templeton had been
given to not snitch, permit an inference that Appellant encouraged the gang
members to assault Templeton.  This
evidence has probative value because it shows that the gang members retaliate
against a person who engages in conduct displeasing to the gang by assaulting
that person.  Appellant argues that the
State did not need the evidence because it had other evidence tending to prove
Appellant’s connection to the gang.  The
evidence was not admitted to show Appellant’s connection to the gang but to
prove that Appellant committed the aggravated assault of Rodriguez with intent
to participate as a member of a criminal street gang.  

As
already discussed, the trial court instructed the jury that it could not
consider the extraneous offenses unless it found beyond a reasonable doubt that
Appellant participated in the extraneous offenses, and even then, it could
consider the evidence only in determining whether Appellant intended to
participate as a member of a criminal street gang as alleged in Counts II and
III of the indictment.  Appellant has
failed to rebut the presumption that the jury followed the trial court’s
instructions.  See Kirsch, 306 S.W.3d at 748; Thrift,
176 S.W.3d at 224.  Further, there is no
evidence that the admission of this extraneous offense would confuse or
distract the jury from the main issues or that the jury would give the evidence
undue weight.  Appellant argues that the
presentation of this evidence took a substantial amount of time but Templeton’s
direct examination testimony about the extraneous offense consisted of only
twenty-one pages of a lengthy trial record. 
We conclude that the trial court did not abuse its discretion by
admitting the extraneous offense evidence related to the gang members’
retaliatory assault on Templeton.  Issue
Two is overruled.  Having overruled both
issues, we affirm the judgment of the trial court. 

 

 

September 5, 2012                              ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish) 











[1]  Paragraphs A through F further alleged that
Appellant used and exhibited a deadly weapon during the commission of the
offense, namely, his hand and/or foot during the commission of the
offense.  Appellant does not challenge
the sufficiency of the evidence to prove the deadly weapon allegation.

 





[2]  Appellant’s entire sufficiency argument, as
it relates to Counts II and III, consists of three sentences:  “As to Counts II and Three, the State
introduced evidence, over Appellant’s objections of at least two (2) extraneous
offenses - the Deadly Conduct offense of November 12, 2007 and the January 30,
2010 assault on Templeton - to somehow establish intent and that Appellant was
a member of the HBM street gang.  Despite
this prejudicial and irrelevant evidence, the State failed to elicit any
evidence that [Appellant] intentionally committed the act against Rodriguez as
a member of HBM, or as a member of a criminal street gang, or that Romero was
even a member of HBM or that HBM intended to commit this act.  Moreover, this fight, over a girl, did not
rise to the level of proving the assault in this case constituted organized
criminal activity.”