**Affirm and Opinion Filed February 3, 2014**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00297-CR

### CHRISTOPHER LEE DODSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2012-2-0554**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Francis

A jury convicted Christopher Lee Dodson of misdemeanor driving while intoxicated (second) and assessed punishment at 365 days in county jail and a $4000 fine. In his sole issue, appellant contends the evidence is insufficient to support his conviction. After reviewing the evidence, we conclude appellant's issue is without merit. We affirm the trial court's judgment.

Amanda Clark was a cashier at a convenience store in Van Alstyne, Texas. Sometime after 11:30 a.m., Clark said appellant entered the store and attempted to purchase alcohol. Clark said appellant spoke in a quiet voice and slurred some words, making him difficult to understand. He leaned in toward her, and Clark said the smell of alcohol "hit [her] in the face." Appellant's hair was disheveled and he looked like he "needed to lay down and go to sleep." Because she

believed appellant was intoxicated, she refused to sell him the alcohol. Appellant exited the store and left in a light-colored pickup truck.

Lori Hartsfield was a customer in the store at the time. She saw appellant standing about a foot away, holding some beer and "kind of swaying a little bit." She heard him talk to the clerk and said his speech was "real slur[red]" and he talked like he had a "thick tongue." Hartsfield believed he had had "too much." After the clerk refused to sell him beer, Hartsfield watched appellant as he left the store to see if he was going to be driving. When he got in his vehicle and drove away, she called the police and gave a description of the pickup truck, the license plate number, and the direction appellant was headed.

Van Alstyne police officer Zach Sweeten responded to the call and, almost immediately, saw a vehicle matching the description at a nearby grocery store. As he approached the vehicle, he saw a man leaving the store with a bag that he later learned contained alcoholic beverages. Sweeten drove around the block so that he could get a better look at the license plate. By the time he returned, the vehicle had moved and was rolling to a stop in front of residence that was down the street from the store.

Sweeten pulled in behind the vehicle, and while he ran the license plate to make sure it was the correct vehicle, he saw appellant talking to the homeowner. After Sweeten confirmed he had the correct vehicle, he walked up to appellant's truck and immediately smelled alcohol. He said appellant had bloodshot eyes and his responses were slow and deliberate, which indicated to him that appellant had to "either contemplate his answer, that he's not sure or he's having issues concentrating on the question." Sweeten asked appellant if he had been drinking, and appellant said he had not. Sweeten had appellant exit his car, and Sweeten could smell alcohol on him. He asked appellant to perform standard field sobriety tests – horizontal gaze nystagmus, walk and turn, and one-legged stand. Appellant agreed. Before performing the walk-and-turn test,

appellant said he broke his toe years ago. Appellant then removed his sock and shoe and showed Sweeten his toe. Sweeten said the knuckle of appellant's big toe was large and appeared to have been broken in the past. Appellant said the toe had been that way his "whole life" and said he would perform the test.

Sweeten testified appellant failed every field sobriety test and explained why. Based on his encounter with appellant and the results of the tests, Sweeten said he did not believe appellant had the normal use of his mental and physical faculties and told appellant he was arresting him for driving while intoxicated. At that point, appellant admitted he drank one beer at 7 a.m. Throughout the encounter, Sweeten said appellant repeatedly asked to be let go with a warning. At the end, however, he asked Sweeten to charge him with public intoxication instead of DWI. Sweeten refused. Sweeten transported appellant to the county jail. A DVD of the stop was admitted into evidence.

On cross-examination, Sweeten acknowledged that when he was dispatched, he never had any indication that appellant was driving erratically, dangerously, or recklessly. He also acknowledged that appellant's speech, while slow, was not slurred, and that his report did not mention appellant had bloodshot eyes. Defense counsel questioned the officer regarding the slope of the road and appellant's toe injury to discredit the results of the field sobriety tests, and also suggested the tests–standing on one leg or walking and turning–had little relevance to driving a car.

At the jail, Sherman police officer Talmadge Rhew, who is certified to conduct the intoxilyzer test, administered the test to appellant. Appellant provided two samples, which showed his blood-alcohol level at .063 and .058 two hours after the stop.

The State's final witness was Julie Evans, a technical supervisor at the Department of Public Safety's Breath Alcohol Testing Program. Evans was responsible for maintaining and

inspecting the Intoxilyzer 5000 used to test appellant's breath. She testified she inspected the instrument nineteen days before appellant's test and one day after; on both occasions, the instrument was operating properly.

Evans told the jury that a person's alcohol level peaks about thirty minutes after the person stops drinking. She said that for an average male of 150 pounds, one drink, meaning a twelve-ounce beer, shot of distilled spirits, or a small glass of wine, equals .02. The elimination rate of alcohol is between .012 and .029 per hour, with the average being .02. An average 150-pound male, who drank four drinks in an hour, would have a blood-alcohol level close to .08, "maybe a little less," considering the elimination rate. An hour later, his level would drop to .06; an hour after that, .04; and an hour after that, .02. In the fourth hour, she said, the level would be close to zero assuming an elimination rate of .02 an hour.

Evans testified that someone who had not consumed alcohol for a five-hour period would be in the elimination phase. She was asked if an average 150-pound male stopped drinking for five hours, given the average elimination rate, and were then tested, how much higher his alcohol reading would be two hours before the test, and she responded she would add .04 to results. Evans testified that in this case, appellant tested at .063 and .058 two hours after he was stopped, and she said it was not possible to know, from those results, his "exact blood alcohol content" while he was driving. She did testify, however, that she did not "see how" an average person, with an average elimination rate, who had stopped drinking for five hours and who tested at .063 could have been below .08 two hours before the test.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the sole judge of the witnesses' credibility and the weight to be given

–4–

their testimony, and it is within the jury's exclusive province to reconcile any conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The jury may choose to believe some testimony and disbelieve other testimony. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

A person commits the offense of driving while intoxicated if he is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013). A person is intoxicated if he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or he has an alcohol concentration of 0.08 or more. *Id*. at § 49.01(2) (West 2011). In this case, the charge authorized the jury to convict under either manner.

The court of criminal appeals has identified several characteristics that constitute evidence of intoxication, including slurred speech or mumbled words, bloodshot or glassy eyes, unsteady balance, a "staggering gait," swaying, inability to perform field sobriety tests or follow directions, and the odor of alcohol on the person or on his breath. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton v. State*, 686 S.W.2d 140, 142–43, n.3 (Tex. Crim. App. 1985). The testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict. *Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Here, the convenience store clerk refused to sell alcohol to appellant because she believed he was intoxicated. That opinion was based on appellant's disheveled appearance and his behavior in the store. In particular, she said appellant slurred his words and was difficult to understand. As he leaned toward her, she could smell alcohol. Similarly, a store customer believed appellant had "too much" to drink. She observed appellant "swaying" as he waited to check out with beer. The customer said she could hear appellant talking to the clerk, and his

words were slurred and he talked like he had a "thick tongue." Finally, Officer Sweeten testified that during his encounter with appellant, appellant had bloodshot eyes and smelled of alcohol. Appellant agreed to perform field sobriety tests, and Sweeten said he failed each one.

Despite this evidence, appellant contends there is "no evidence" that he did not have the normal use of his physical and mental faculties. He argues that he had a broken toe and had to perform the tests on a slope in the road, which he contends provide a "reasonable explanation" for why he performed poorly. Additionally, he says no witness testified to seeing him operate his vehicle in a way indicating he was intoxicated.

The jury heard evidence regarding the conditions under which the tests were performed, viewed a recording of the stop, and could have believed appellant's childhood injury and the slope in the road were not the causes of his poor performance much less his inability to follow Sweeten's directions. That he was not seen driving recklessly, dangerously, or otherwise was a factor to be considered by the jury but was not dispositive.

Considering all the evidence, we conclude a rational jury could have found beyond a reasonable doubt that appellant did not have the normal use of his mental and physical faculties while operating a motor vehicle in public. We overrule the sole issue.

We affirm the trial court's judgment.


/Molly Francis/
Do Not Publish                          MOLLY FRANCIS
TEX. R. APP. P. 47                       JUSTICE
130297F.U05


–6–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER LEE DODSON, Appellant

No. 05-13-00297-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Grayson County, Texas
Trial Court Cause No. 2012-2-0554.
Opinion delivered by Justice Francis;
Justices Lang-Miers and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 3, 2014

/Molly Francis/

MOLLY FRANCIS
JUSTICE