**Opinion filed May 30, 2014**



# In The

# Eleventh Court of Appeals

_____

## No. 11-12-00127-CR

_____

## ABEL BALDERAS SUAREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR32696**

## M E M O R A N D U M   O P I N I O N

Abel Balderas Suarez appeals his jury conviction of felony driving while intoxicated as a repeat offender. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (West 2014). Appellant pleaded "true" to the enhancement paragraph that alleged that he was previously convicted of the felony offense of failure to stop and render aid. The jury found the enhancement allegation to be true and

assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of seventeen years and a fine of $10,000. In a single issue on appeal, Appellant argues that the evidence was insufficient to sustain his conviction. We affirm.

*Evidence at Trial*

Appellant was charged by indictment with the offense of felony driving while intoxicated (DWI) as a repeat offender. The indictment alleged that, on or about January 28, 2006, Appellant operated a motor vehicle in a public place while intoxicated. The indictment further alleged that Appellant was convicted of the offense of driving and operating a motor vehicle while intoxicated on two previous occasions. Appellant pleaded "not guilty" to the charged offense, and the case proceeded to trial.

Phillip Breeding, a Ranger with the Texas Ranger Division of the Texas Department of Public Safety (DPS), testified that he was dispatched to an accident at West CR 117 and South CR 1199 in Midland, Texas, shortly before 10 p.m. on January 28, 2006. Once he arrived at the scene, Ranger Breeding determined that the accident had occurred when an individual named Socorro Martinez failed to yield the right-of-way to Appellant. After speaking with Appellant, Ranger Breeding suspected that Appellant might be intoxicated. Because Ranger Breeding was preoccupied with the crash investigation, he turned Appellant's DWI investigation over to Trooper Kevin Baggett.

Kevin Baggett, who was a DPS trooper at the time of the offense, testified that he was dispatched to the accident scene in order to assist with a possible DWI investigation. After Trooper Baggett arrived at the scene, Ranger Breeding asked him to interview Appellant for signs of intoxication. When Trooper Baggett asked Appellant in English if he had had anything to drink that night, Appellant stated that he had consumed three beers. Trooper Baggett noticed that Appellant had

2

some difficulty speaking English, so he asked Deputy Reyes[1] of the Midland County Sheriff's Office, who spoke fluent Spanish, to translate his communication with Appellant.

Trooper Baggett next administered the field sobriety test known as horizontal gaze nystagmus (HGN) on Appellant.[2]  Trooper Baggett first made sure that Appellant's pupils were equally dilated, that Appellant could track a stimulus equally with both eyes, and that Appellant had no medical condition that prevented him from performing the test.  Trooper Baggett then asked Appellant to follow a stimulus with his eyes as he stood with his feet together and his arms down by his sides.  Trooper Baggett detected involuntary jerking, a sign of intoxication, in Appellant's eyes during all three stages of the test.[3]

Trooper Baggett then asked Appellant to perform the walk-and-turn test, during which Appellant was instructed to take a series of heel-to-toe steps on an imaginary straight line, turn around while leaving his left foot planted, and then repeat the same series of steps.  Trooper Baggett demonstrated the test for Appellant, and the instructions Trooper Baggett gave to Appellant were translated into Spanish by Deputy Reyes.  During the test, Appellant showed several signs of intoxication: he had difficulty remaining balanced, missed several heel-to-toe steps, and turned improperly.  At this point, to better confirm Appellant's suspected intoxication, Trooper Baggett turned the investigation over to Trooper Carlos Salgado, who spoke fluent Spanish.

---

[1]Deputy Reyes's first name does not appear in the record.

[2]Trooper Baggett explained that there are three standardized field sobriety tests: (1) the HGN, (2) the walk-and-turn, and (3) the one-leg stand.

[3]Trooper Baggett stated that the HGN test is comprised of three stages: (1) nystagmus at maximum deviation, (2) onset of nystagmus at prior to forty-five degrees, and (3) vertical nystagmus.

Trooper Baggett observed Trooper Salgado administer the one-leg stand test on Appellant, during which Appellant made no errors. Trooper Baggett then watched Trooper Salgado administer the HGN test on Appellant.[4] After Trooper Salgado concluded the test, he and Trooper Baggett determined that Appellant was intoxicated, and Appellant was arrested for the offense of DWI.

Appellant then agreed to provide a breath specimen, and Trooper Baggett transported him to the Midland County Detention Center to obtain the specimen. Once they arrived at the Detention Center, Appellant blew two times into a machine known as the Intoxilyzer 5000. The results showed that Appellant's breath had an alcohol concentration of 0.124 at 11:01 p.m. and 0.126 at 11:04 p.m.

Lisa Fondren, a certified chemist, testified as an expert on the physiological effects of alcohol on the body. Fondren explained that a person experiences the highest level of alcohol concentration in his body twenty minutes after consumption ends on an empty stomach and forty minutes after consumption ends on a full stomach.

Trooper Carlos Salgado testified that he offered his Spanish-speaking skills to Trooper Baggett at the scene of Appellant's intoxication investigation on January 28, 2006. After Trooper Baggett handed the investigation over to him, Trooper Salgado administered the one-leg stand test and the HGN test on Appellant. Trooper Salgado observed no signs of intoxication during the one-leg stand test but saw jerking in Appellant's eyes during all three phases of the HGN test. Trooper Salgado concluded that Appellant was intoxicated, and Trooper Baggett arrested Appellant for the offense of DWI. Trooper Salgado then read in Spanish to Appellant the warnings on the consequences of providing a

---

[4]The in-car video taken from Trooper Baggett's patrol car was also played for the jury. The video showed Appellant performing the HGN test and the walk-and-turn test at Trooper Baggett's direction and then later performing the one-leg stand test and the HGN test at Trooper Salgado's direction.

blood or breath specimen, and Appellant voluntarily agreed to provide a breath sample.

Using an interpreter, Appellant testified that he had been driving his vehicle when another car pulled out in front of him on the night of January 28, 2006. Appellant admitted that he had consumed "three or four" beers after work that day and that the last meal he had eaten before consuming the alcohol was lunch, at around noon.

Appellant confirmed that he understood Trooper Baggett's question about whether he had been drinking that night as well as the instructions Trooper Baggett gave him during the field sobriety tests. Appellant also stated that he consented to give a breath sample and that he understood that he had the right to refuse to provide such a sample. Finally, Appellant admitted that he had been convicted of the offense of DWI on two prior occasions.

*Analysis*

In a single issue on appeal, Appellant argues that the evidence at trial was insufficient to sustain his conviction. Appellant contends that the State failed to prove what his blood alcohol content was at the time of the alleged offense. Appellant also contends that the State failed to prove that he had lost the normal use of his mental or physical faculties by reason of the induction of alcohol.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under that standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

To obtain a conviction for DWI, the State must prove that the defendant operated a motor vehicle in a public place while intoxicated. PENAL § 49.04(a). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (West 2011). These two definitions are not mutually exclusive, and as long as there is evidence to support both definitions, both theories may be submitted in the jury charge. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010).

The State need not establish the precise time of an accident or of the defendant's driving to prove the offense of DWI. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Kennemur v. State*, 280 S.W.3d 305, 314 n.8 (Tex. App.—Amarillo 2008, pet. ref'd); *Zavala v. State*, 89 S.W.3d 134, 139 (Tex. App.—Corpus Christi 2002, no pet.). However, the State must establish "a temporal link between the defendant's intoxication and his driving." *Kuciemba*, 310 S.W.3d at 462. Thus, there must be proof from which the jury can conclude that, at the time of the driving in question, the defendant was intoxicated. *Zavala*, 89 S.W.3d at 139. A conviction for DWI can be supported solely by circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462.

In this case, both theories of intoxication were submitted to the jury, and the jury returned a general guilty verdict. Consequently, Appellant's conviction will be upheld so as long as sufficient evidence was presented at trial to prove either of the alleged theories. *See Bagheri v. State*, 119 S.W.3d 755, 761 n.5 (Tex. Crim. App. 2003) (noting that, when the trial court submits alternate means by which the State may prove intoxication, the evidence is sufficient to support a general guilty verdict if it is sufficient to prove any of the means alleged).

6

Although Appellant was not at fault for the accident on the night of January 28, 2006, the responding officer suspected that Appellant was intoxicated and initiated a DWI investigation. At the scene, Appellant stated that he consumed three beers earlier that night. At trial, Appellant testified that he drank "three or four" beers before he drove his vehicle that night.

Appellant failed the HGN tests and the walk-and-turn test, and the jury watched a video of Appellant's performance of the tests. Two different officers found involuntary jerking in Appellant's eyes during all three stages of the HGN tests, and while performing the walk-and-turn test, Appellant showed several signs of intoxication.

Appellant also voluntarily provided two breath specimens that showed alcohol concentration levels of 0.124 and 0.126, considerably higher than the legal limit. Although the samples were taken approximately seventy-five minutes after the accident, Appellant's high alcohol concentration levels supported an inference "that he had been intoxicated for quite a while." *See Kuciemba*, 310 S.W.3d at 463. The breath test results, along with the other evidence presented at trial— including Appellant's admission that he drank three or four beers, Appellant's failure to successfully complete the field sobriety tests, and the testimony of the investigating officers—established Appellant's intoxication on the night of January 28, 2006. *See Stewart v. State*, 129 S.W.3d 93, 95–97 (Tex. Crim. App. 2004) (holding that 0.154 and 0.160 alcohol concentration results of breath tests taken eighty minutes after the defendant had been driving had considerable probative value); *Gigliobianco v. State*, 210 S.W.3d 637, 639–42 (Tex. Crim. App. 2006) (finding that 0.09 and 0.092 alcohol concentration results of breath tests taken seventy-five minutes after the defendant had been driving had considerable probative value in proving either statutory definition of intoxication).

Viewed in the light most favorable to the conviction, we find that there was sufficient evidence for a rational trier of fact to have found Appellant guilty of the offense of DWI. Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


May 30, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.