**AFFIRM; and Opinion Filed December 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00049-CR

### LAWRENCE TODD TEDDER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. MB13-52586-H**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Myers, and O'Neill[1]
Opinion by Justice O'Neill

Appellant Lawrence Todd Tedder waived a jury and pleaded not guilty to driving while intoxicated. After finding appellant guilty, the trial court assessed punishment at 180 days' confinement in the Dallas County jail, probated for twelve months, and a $500 fine. In two issues, appellant contends the evidence is legally and factually insufficient to support his conviction. We affirm.

### BACKGROUND

On February 6, 2013, Officer Joshua Boykin of the Dallas Police Department was dispatched to the scene of a minor two-vehicle accident at South Houston Street and Main Street in Dallas. As Boykin drove up, he noticed appellant standing outside of his vehicle talking on

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

his cell phone. Boykin spoke first to the other driver and then spoke to appellant. Appellant told Boykin that he was driving southbound in the second lane on Houston Street and hit the other driver's car while trying to turn northbound on Main Street. At trial Boykin pointed out two errors in appellant's explanation. First, Boykin testified that Main Street runs east-west, so appellant could not have been turning northbound. Second, Boykin testified that the other driver's car was in the "second lane" on Houston Street, not appellant's car.

During his contact with appellant, Boykin noticed that appellant had "red, bloodshot eyes." Boykin "could smell the odor of an alcoholic beverage coming from [appellant's] breath." Boykin observed that appellant's speech was slurred. Appellant admitted to Boykin that when he got out of his car after the crash, he told the other driver "I had to pee really really really bad." Appellant admitted he walked in front of his car and urinated there. Boykin testified he saw the wet spot in front of appellant's car.

Appellant admitted to Boykin that he had been driving the car during the crash. Appellant explained that he did not have any passengers in the car. He told Boykin he had been at a Mavericks basketball game at the American Airlines Center where he had eaten a hot dog about 7:30 p.m. and consumed two pint-sized draft beers between 8:00 p.m. and 8:45 p.m. Boykin estimated the American Airlines Center was "[p]robably three to four miles" from the scene of the accident. Appellant told Boykin he was taking medication for diabetes, cholesterol, and blood pressure, and also was using aspirin.

Boykin, who is certified to give standardized field sobriety tests, administered the tests to appellant, including the horizontal gaze nystagmus (HGN), the walk-and-turn, and one-leg stand tests. Appellant exhibited six out of six clues for intoxication on the HGN test, three out of eight clues on the walk-and-turn test, and two out of four clues on the one-leg stand test. Boykin testified the number of clues present indicated intoxication on each of those tests. Boykin also

administered the alphabet test and the counting backwards test, which are divided attention tests. For the alphabet test, Boykin asked appellant to recite letters D to W. Appellant recited the letters properly but got tripped up at the end and partially started over to recite the letters S through W. Appellant did count backward correctly from 39 to 17. Boykin admitted that appellant was overweight and excessive weight is something that must be considered in evaluating performance on the tests.

Boykin testified it was his opinion that appellant was intoxicated, had lost the normal use of his mental and physical faculties, and could not safely operate a car. A dashboard camera in Boykin's patrol car recorded Boykin's interaction with appellant including appellant's performance on the field sobriety tests. The videotape was admitted into evidence, and shows that the recording began at approximately 11:35 p.m. on February 6, 2013.

After Boykin completed all of the field sobriety tests, he placed appellant under arrest and transported appellant to jail. Around 1:00 a.m., appellant took a voluntary breath test. During trial, the parties stipulated that the test results showed a blood alcohol level of 0.11.

On cross-examination at trial, Boykin testified he did not know how long it had taken officers to arrive at the scene of the accident. He was not the first officer to arrive, but he explained that the first officer on the scene was not present to testify because he was retired at the time of trial.

Officer William Martinez of the Dallas Police Department served as the accident investigator, arriving at the scene after Boykin. Martinez also testified at trial. He explained that he has been an officer for over twenty-three years and has specialized training in traffic stops. Martinez testified that his investigation showed appellant "had made a left-hand turn from the wrong lane in front of the [other driver], which caused the crash." Martinez said that appellant told him he was coming from an event. Martinez noticed "signs and symptoms of intoxication,"

including that appellant's eyes were bloodshot. Martinez could not recall if he smelled an alcoholic beverage odor on appellant.

At the conclusion of the trial, the court found appellant guilty and assessed punishment. This appeal followed.

## APPLICABLE LAW

Although appellant challenges both the legal and factual sufficiency of the evidence, this Court no longer performs factual sufficiency reviews. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). The legal sufficiency standard set forth in *Jackson v. Virginia* is now "the only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of a criminal offense." *Id*. at 895 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Dobbs*, 434 S.W.3d at 170. In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Smith v. State*, 895 S.W.2d 449, 452 (Tex. App.—Dallas 1995, pet. ref'd).

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2016). "Intoxicated" means not having the normal use of mental or physical faculties by

reason of the introduction of alcohol into the body. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011).

Evidence of intoxication may include: (1) slurred speech; (2) bloodshot eyes; (3) the odor of alcohol on the person or on the breath; (4) an unsteady balance; and (5) a staggered gait. *See Cotton v. State*, 686 S.W.2d 140, 142 & n. 3 (Tex. Crim. App. 1985); *Tex. Dept. of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *see also Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (evidence that logically raises inference of intoxication includes, among other things, stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, and any admissions concerning what, when, and how much defendant had been drinking). "Being intoxicated at the scene of a traffic accident in which the actor was a driver" is some circumstantial evidence that the actor's intoxication caused the accident. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). As a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for a DWI offense. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); *Watkins v. State*, 741 S.W.2d 546, 549 (Tex. App.—Dallas 1987, pet. ref'd).

### DISCUSSION

Appellant contends the evidence is legally insufficient to support the conviction because there was no evidence showing he was intoxicated, and there was no evidence showing "the necessary temporal link between appellant's driving and his intoxication."

### 1.    Intoxication

Appellant argues there was no evidence of intoxication because (1) Boykin admitted that the only field sobriety test he conducted was performed incorrectly and the validity of the results

were compromised;[2] and (2) the videotape "clearly shows that [appellant] has control of all his mental and physical faculties."

As we have discussed, Boykin conducted several field sobriety tests. Boykin testified that appellant performed poorly on the tests. Boykin also testified that appellant had bloodshot red eyes, smelled of alcohol, had slurred speech, and had urinated in front of his car. Boykin believed appellant had lost the normal use of his mental or physical faculties due to intoxication by alcohol. During Boykin's testimony the trial court also viewed portions of the videotape taken at the accident scene. Martinez confirmed that appellant had bloodshot eyes and displayed signs of intoxication. The trial court also heard evidence that appellant gave a voluntary breath test when he was taken to the county jail. Appellant stipulated that the test showed a blood alcohol concentration of 0.11, a result that is over the legal limit. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011) (establishing alcohol limit of 0.08 as threshold for intoxication).

Appellant relies on the evidence that he passed the counting test. And at trial, appellant's counsel argued that on the videotape "you can hear [appellant] speak very clearly, very politely, and very respectfully, totally cooperates and answers every question asked of him. And he does it in a clear and concise way."

The trial court was the sole judge of the credibility of the witnesses and the evidence. *See Smith,* 895 S.W.2d at 452. Despite the evidence of the counting test and appellant's cooperation with Boykin, the record also reflects that appellant failed the majority of the field sobriety tests administered to him and exhibited multiple signs of intoxication. *See Kirsch*, 306 S.W.3d at 745–46. Viewing the evidence in the light most favorable to the verdict, we conclude the

---

[2]In his brief appellant contends that Boykin "admitted that [the HGN] test was performed incorrectly and thus the validity of the results would be compromised," citing "RR3-109-110." Boykin's testimony is found in volume 1 of the reporter's record at pages 5 through 35. His cross-examination does not appear to contain any such admission. During Boykin's testimony the trial court did note appellant's objection to any evidence regarding a portable breath test, and stated, "The Court will not consider, and did not even see, any evidence about the portable breath test . . . . That will not be considered by the Court." Appellant does not contend the trial court erred by admitting any evidence obtained through tests conducted at the scene of the accident. We therefore do not consider his complaint about the HGN test further.

evidence is sufficient to support the trial court's finding that appellant was intoxicated. *See Brooks*, 323 S.W.3d at 894–95.

### 2. Temporal link

Appellant next argues there is no evidence showing the necessary temporal link between his intoxication and his driving because (1) no witnesses testified to his driving before the accident; (2) the record does not reflect how soon after the accident Boykin arrived at the scene; and (3) there was no other evidence on which the court could have relied to establish a link between appellant's driving and his intoxication.

Appellant acknowledges that in *Kuciemba*, the court held intoxication at the scene of a traffic accident in which the actor was a driver is some evidence that the actor's intoxication caused the accident. *See Kuciemba*, 310 S.W.3d at 462. But he argues that *Kuciemba* is distinguishable on its facts. In *Kuciemba*, the arresting officer arrived at the scene of a single-vehicle rollover accident to find the defendant sitting in the driver's seat with blood running down his face from fresh cuts and exhibiting signs of intoxication. *See id.* at 461. A field breath test showed his blood alcohol level was 0.214. *Id*. After noting that an offense of driving while intoxicated requires proof of a temporal link between the defendant's intoxication and his driving, and explaining that the necessary link may be proved by either direct or circumstantial evidence, the court concluded that the combination of circumstances in the case supported an inference either that the defendant had recently been involved in an accident or that he had been intoxicated for a long time. *Id*. at 462–63. Therefore, the circumstantial evidence supported the defendant's conviction for driving while intoxicated. *Id.* at 463.

Appellant cites as distinguishing facts that *Kuciemba* involved a single-vehicle accident; the defendant's vehicle was in a ditch; no brake marks or skid marks were observed; the defendant was behind the wheel when law enforcement officers arrived; he had fresh, bleeding

cuts on his face; he had slurred speech, a strong odor of alcohol on his breath, and difficulty standing; and he had a blood alcohol level of .214. *See id.* Appellant argues that none of these factors were apparent in this case.

Here, however, there was circumstantial evidence sufficient to show that appellant had been involved recently in an accident when Boykin observed him to be intoxicated. Appellant admitted to Boykin that he drank alcohol at 8:30 p.m. and 8:45 p.m. at a Mavericks game and that he was coming from the game at the time of the accident. The accident scene is, according to Boykin, three or four miles away from the site of the game. Boykin testified that he probably began performing the field sobriety tests around 11:30 p.m. and the breath test was performed close to 1:00 a.m. The videotape reflects a start time of 11:36 p.m. Appellant had urinated after the accident, and the spot where he urinated was still wet. All of this evidence places boundaries on the time that appellant could have been involved in the accident. Moreover, although the accident in question was not a single vehicle accident, Martinez's investigation established that appellant drove across two lanes of traffic on a one-way street to make a left turn and collided with a vehicle in the second lane. When coupled with the evidence of appellant's intoxication observed by Boykin and appellant's blood alcohol content of 0.11, the circumstances of the accident support a finding that appellant was intoxicated at the time he caused the accident. We conclude that there was legally sufficient evidence to establish a temporal link between appellant's intoxication and his driving. *See id.*; *Kirsch*, 306 S.W.3d at 745.

Viewing all the evidence under the proper standard, we conclude it is legally sufficient to support appellant's DWI conviction. *See Jackson*, 443 U.S. at 318–19; *Dobbs*, 434 S.W.3d at 170. We overrule appellant's issues.

## CONCLUSION

We affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

Do Not Publish
Tex. R. App. P. 47

160049F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LAWRENCE TODD TEDDER, Appellant

No. 05-16-00049-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 7, Dallas County, Texas
Trial Court Cause No. MB13-52586-H.
Opinion delivered by Justice O'Neill; Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of December, 2016.