

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0379-09

**BRIAN THOMAS KIRSCH, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined. PRICE, J., filed a dissenting opinion in which MEYERS, J., joined.

### OPINION

A jury convicted appellant of driving while intoxicated (DWI) and sentenced him to 45 days in jail. Appellant contends that the court of appeals erred in upholding the trial court's submission of a jury charge on per se intoxication by having an alcohol content in his blood of 0.08 or more when the evidence of appellant's blood alcohol level was admitted

pursuant to a limiting instruction.[1]  We agree with the court of appeals that (1) the judge's

oral limiting instruction was improper, but (2) the totality of the evidence sufficed to permit

the jury to conclude that appellant had an alcohol concentration of 0.08 or more at the time

he was driving.  We therefore affirm the judgment of the court of appeals.

## I.

At approximately 3:00 a.m. on May 13, 2006, appellant, a Harris County deputy

sheriff, was involved in an automobile accident with a tractor-trailer in north Houston.

Appellant had been working an extra job, patrolling the Pine Shadows neighborhood that

night in a patrol car.  As appellant drove southbound in the right-hand lane of the freeway

frontage road, Jesse Gomez, in his 18-wheel tractor-trailer, was ahead of appellant, preparing

to make a right-hand turn at the Airtex intersection.  Because of the size of his vehicle, Mr.

Gomez made a wide right turn from the center lane.  He testified that, before turning, he

checked his mirrors and saw appellant's patrol car about 300 feet behind him.  Deciding that

the patrol car was a safe distance away, Mr. Gomez turned on his right-turn signal, slowed

to approximately 15 m.p.h., and began his turn.  Mid-turn, Mr. Gomez felt an impact to the

side-rear portion of the trailer that caused his 78,000-pound trailer to skid sideways.  After

the trailer came to a rest, Mr. Gomez hurried to investigate the cause of the impact,

---

[1] Appellant's sole ground for review states,
The First Court of Appeals erred in permitting a jury charge for per se intoxication
when evidence of appellant's blood alcohol level was admitted pursuant to a
limiting instruction and there was no evidence that appellant was intoxicated per
se at the time he was driving the automobile.

discovered appellant unconscious in his patrol car, and called 911.

Responding paramedics took appellant to Ben Taub Hospital for treatment of a head injury. They did not notice any signs of intoxication or impairment on appellant because he was unconscious, but one paramedic smelled alcohol in appellant's blood. At the hospital, appellant regained consciousness, but behaved belligerently. Emergency-room personnel described appellant as "lethargic, slurring, uncooperative, and unresponsive." His medical records stated that "upon arrival, patient was obviously intoxicated." Those records also described appellant as combative, destructive, and exhibiting poor impulse control, and revealed that the physician had permitted a "4-point restraint" for "up to 8 hours total if patient [exhibited] unacceptable behavior."

Dr. Becker, the emergency center-chief, thought that appellant's aggressive behavior was the result of alcohol consumption rather than head trauma because appellant seemed to understand, but intentionally disregard, questions, requests, and commands. Dr. Becker ordered a blood-alcohol test at 4:28 a.m., which revealed a serum-alcohol concentration of 0.123, that translated to a blood-alcohol level (BAC) of 0.10.

Investigating officers downloaded information from the patrol car's "black box"–a device that stores data about a car's functions for five seconds prior to air-bag deployment.[2] The data showed that appellant was driving 69 m.p.h. four seconds before the collision and 67 m.p.h. one second before the crash. The posted speed limit was 50 m.p.h. The patrol car

---

[2] Technically, it is an "event data retrieval module."

left skid marks on the pavement, but the black box indicated no brake application, suggesting that appellant had applied his brakes less than one second before impact.  Deputies also found two Smirnoff vodka bottle caps in the patrol car.

Appellant filed a pretrial motion to suppress the blood-test results and argued  that the State could not produce retrograde extrapolation testimony.[3]  The trial court denied the motion to suppress, but said that he intended to admit the BAC-test result with a limiting instruction until the State offered extrapolation evidence.[4]

When the State started to elicit testimony about appellant's BAC-test result during the trial, the judge discussed his proposed limiting instruction outside the presence of the jury:

---

[3] *See Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001) ("Retrograde extrapolation is the computation back in time of the blood-alcohol level–that is, the estimation of the level at the time of driving based on a test result from some later time"; noting that a particular absorption rate depends on a variety of factors, including, *inter alia*, food in the stomach, gender, weight, age, amount consumed, and period of consumption).

[4] The colloquy at that hearing was as follows:

| | |
|---|---|
| State: | At this point in time, I don't feel that I have sufficient extrapolation facts to perform the retrograde extrapolation. . . . |
| Defense: | Without it . . . we move the admissibility of any of the evidence is irrelevant. |
| Court: | Well, he's allowed to put in a test result to show that alcohol was somewhat involved, I believe. . . . |
| State: | Judge, both the Stewart and [Mechler] case[s] have been recently decided and all the evidence shows that alcohol has been ingested and also to show loss of normal use of mental and physical faculties. |
| Court: | [There will] . . . have to be a limiting instruction . . . if it does come into evidence. So, the Court will give a limiting instruction at the time that's admitted, if it is admitted. |
| State: | Sure.  I don't have any problem with that.  I anticipate the Defense is going to call witnesses that will give me extrapolation facts.  But I'll certainly approach the Court before that. |

Court:        I think it's wise to instruct them at the time that it comes in that it is offered for limited purposes at this time.  It's certainly admissible on the issue of whether or not the individual had ingested alcohol. . . and it's in their system.

State:        I'd prefer just to keep it simple and just to that particular time because I think things may change.

Court:        Of course.

State:        But I'm not going to be able to ask you later on to comment and say, Now things are changed; now you can use the results.

Court:        I want one instruction that they can go with that will fit with the written instructions that they'll get at the close of trial, that will include the instruction that says that the State has to prove it beyond a reasonable doubt that alcohol level was .08 or greater at the time of driving . . . .

State:        Okay.  So then you'll say at this particular point in the trial, this evidence is for the –

Court:        Limited purpose of showing that the individual who was tested had ingested alcohol at some time prior to the test.

State:        All right.  With the proviso that the Court is adamant that the jury understands that it's at this particular time in the trial, that's what it's for.

Court:        Right.  And say nothing more than that.  Is that acceptable to you all?

All agreed.  When the jury reentered, the judge gave the following limiting instruction:

> Members of the jury, I'm going to tell you now that the result is off – will be received by the Court for the limited purpose of showing that the individual who was tested had ingested alcohol only at some point before the time of the test.  That is the only purpose that will be offered and the only purpose for which you should receive it at this time in this trial.

The Ben Taub laboratory supervisor then testified that appellant's BAC level was 0.10 some eighty minutes after the accident.

During a hearing on appellant's motion for directed verdict, the trial court expressed concern about whether there was sufficient evidence to support a charge on the "per se"

definition of intoxication.[5]  Appellant argued that, given the limiting instruction, there was

insufficient evidence to permit a conviction on the per se definition.  The judge denied

appellant's motion and charged the jury on both statutory definitions of intoxication.[6]

During closing arguments, the issue of how the jury could consider the BAC-test result

arose again.  Defense counsel stated:

I hate – I don't want to talk too much on this blood test because . . . the machine

---

[5] Under TEX. PENAL CODE § 49.0(2)(B), "'Intoxicated' means: having an alcohol
concentration of 0.08 or more."  This BAC level is measured by a blood, breath, or urine test.
Concerning the per se definition of intoxication, the trial judge stated,

Court:          I'm concerned about there being sufficient evidence to support a general verdict if
                the test paragraph is in and goes in the application paragraph in the jury
                instructions, because there is no evidence of extrapolation back to the time of
                driving.  I don't see any evidence at all. . . . I'm concerned – if the jury were to
                come back with a guilty verdict, we would not know which paragraph they relied
                on.  And on .08 paragraph, I don't see enough evidence on the .08 at this point to
                show that he had an .08 at the time [of the offense]. . . .
State:          I understand what your concern is.  You know, the case law is pretty clear that I
                don't have to extrapolate to get the breath test results in or the breath test
                paragraph.  So, we've had this hullabaloo in the appellate courts for about four or
                five years now, that I believe has been put to rest with *Mata* and *Mechler* and
                *Stewart*, that the breath test result comes [in].  We get to submit the entire loss of
                normal use and .08 paragraph to the jury.  And they don't have to elect, they just
                get to decide the evidence. . . .
Court:          I just want to be sure of that before we go forward tomorrow, okay?
State:          Sure.  I'll go and find those.

[6] The pertinent portion of the application paragraph read:
. . . if you believe from the evidence beyond a reasonable doubt that the Defendant
. . . did while intoxicated, namely, not having the normal use of his mental and
physical faculties due to the introduction of alcohol in to his body, operate a motor
vehicle in a public place; OR
If you believe from the evidence beyond a reasonable doubt that the Defendant . . .
did while intoxicated, namely, having an alcohol concentration of at least 0.08 in
his blood, operate a motor vehicle in a public place, you will find the Defendant
guilty.

> can make mistakes. . . .  And, again, that is still an hour and a half later and there's no evidence of blood alcohol concentration at the time of driving.  And you cannot make the leap of faith there. . . . Remember the Judge's limiting instruction as to when you got that evidence?  You can't go anywhere else.

In rebuttal, the prosecutor offered a different interpretation:

> Let's focus on the specifics.  The instruction that you got when [the BAC-test result] came in, that was given to you to consider that particular evidence at that particular time in the trial.  That instruction is gone now.

Appellant objected, noting that the trial judge had not withdrawn the oral limiting instruction; the trial judge agreed, explaining, "It's not in the written instructions, but it is an oral instruction that the jury is still required to abide by."  The jury returned a general verdict of guilty.

On direct appeal, appellant claimed, *inter alia*, that the trial judge erred in submitting jury instructions on the per se definition of intoxication.  He argued that, because the blood-alcohol evidence was admitted with an instruction that permitted the jury to consider the evidence for the limited purpose of showing that appellant ingested alcohol only at some point prior to the test, the jury should not have been charged on per se intoxication because there was insufficient evidence to prove appellant's BAC at the time he drove.[7]  The court of appeals concluded that the jury charge was proper, although the limiting instruction was not.[8]

---

[7] *Kirsch v. State*, 276 S.W.3d 579, 589 (Tex. App.—Houston [1st Dist.] 2008).

[8] *Id.* at 591.

## II.

Under the Texas DWI statute,  intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more.[9]  The first definition is the "impairment" theory, while  the second is the "per se" theory.  They are not mutually exclusive, and, as long as there is evidence that would support both definitions, both theories are submitted in the jury charge.[10]

We first address the admissibility and probative value of BAC-test evidence and then the propriety of the trial court's per se intoxication charge and the limiting instruction.

**A.    Admissibility of BAC-test results.**

*1. The law.*  The court of appeals properly analyzed several recent cases in which we held that intoxilyzer BAC results were admissible and probative of per se intoxication even without retrograde extrapolation testimony.[11]  In *Stewart v. State*, the defendant took an intoxilyzer test approximately 80 minutes after she had been driving.[12]  The trial court admitted the  result of 0.154 as some evidence that her BAC was over the then legal limit of 0.10 while driving. However, the court of appeals reasoned that, by admitting the breath test, the court had

---

[9] T EX. PEN. CODE § 49.01(2).

[10] *See State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005) (citing *State v. Mechler*, 123 S.W.3d 449, 456 (Tex. App.—Houston [14th Dist.] 2003)).

[11] *Kirsch*, 276 S.W.3d at 589-91.

[12] *Stewart v. State,* 129 S.W.3d 93, 95 (Tex. Crim. App. 2004).

encouraged the jury to "conduct its own retrograde extrapolation and to decide the case based on facts not in evidence."[13] It held that the results were irrelevant to show she was intoxicated at the time she drove.[14] We reversed and explained,

> Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence.
>
> The issue here is whether Stewart was intoxicated at the time she drove. Stewart's breath test results tended to make it more probable that she was intoxicated at the time she drove under either definition of intoxication because they provided evidence that she had consumed alcohol. And, there is no evidence that she consumed alcohol after driving.[15]

Although we stated that the test result was not "conclusive" evidence of the defendant's intoxication at the time she was driving, it was probative and, coupled with the other evidence, could suffice to prove per se intoxication at the time she was driving.[16]

---

[13] *Id.* at 96 (citing *Stewart v. State*, 103 S.W.3d 483, 486 (Tex. App.—San Antonio 2003)).

[14] *Id.*

[15] *Id.* (footnotes omitted).

[16] *Id.* at 97. We noted:
> The breath test results were pieces in the evidentiary puzzle for the jury to consider in determining whether Stewart was intoxicated at the time she drove. The jury had other evidence to decide that issue, such as the arresting officer's testimony about Stewart's driving patterns before he pulled her over, the results of Stewart's field sobriety tests, Stewart's admission to the officer that she had a couple of beers at the concert, Stewart's statement that she "couldn't do [the field sobriety tests] sober," the officer's videotape recording these events, and the fact that the breath tests were conducted an hour and twenty minutes after Stewart's traffic stop.

*Id.* ("The breath test results were properly admitted evidence to consider with all of the other evidence of intoxication to determine if Stewart was intoxicated at the time she drove.").

Similarly, in *State v. Mechler*, the defendant's intoxilyzer-test result indicated a BAC of 0.165 approximately 90 minutes after he had driven.[17]  Mechler moved to suppress the result because the State was unable to offer retrograde extrapolation testimony, and the trial court granted his motion based on *Mata v. State*.[18]  In *Mata*, we held that expert extrapolation testimony is admissible only if certain factors are known, such as "the length of the drinking spree, the time of the last drink, and the person's weight."[19]  However, in *Mechler*, we affirmed the court of appeals's holding that *Mata* addressed only the admissibility of expert testimony, not the admissibility of the test results.[20]  We concluded that the BAC results were admissible in *Mechler* even without extrapolation testimony because (1) "they tend to make it more probable that [the defendant] was intoxicated at the time of driving under both the per se and impairment definitions of intoxication" and (2) their probative value outweighed the

---

[17] 153 S.W.3d at 437.

[18] *Id.* (citing *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001)).

[19] *Mata*, 46 S.W.3d at 915.  In *Mata* we explained that experts can, with sufficient information concerning an individual's weight, age, mental state, drinking pattern, type and amount of alcohol consumed, amount of food in the stomach, and the time period of alcohol consumption, reliably estimate that person's BAC at the time of driving.  *Id.* at 916.  But we also noted that experts say that the process of alcohol absorption is 'highly variable,' and 'the limitations and pitfalls associated with retrograde extrapolation are often not appreciated by laymen and the courts.'"  *Id.* at 910 (quoting Richard Watkins & Eugene Adler, *The Effect of Food on Alcohol Absorption and Elimination Patterns,* 38  J. OF FORENSIC SCIENCE 285, 288 (1993)).  Just as I.Q. test results are not an exact measurement of a person's intelligence level, so, too, the "standard" or "average" extrapolation of BAC-test results back to the time of driving is not exact unless numerous variables are accounted for.  Like IQ tests, which may be probative of mental retardation, so may BAC-test results be probative of an ultimate fact such as intoxication at the time of driving, while not a precise measure of that fact.

[20] *Mechler*, 153 S.W.3d at 438.

risk of unfair prejudice under Rule 403.[21]

More recently, in *Gigliobianco v. State*,[22] we reiterated that the 0.09 and 0.092 BAC results of two breath tests taken 75 minutes after driving had considerable probative value in proving both per se and impairment intoxication at the time of driving.[23]

The purport of these decisions, taken together, is that BAC-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication. However, a BAC-test result, by itself, is not sufficient to prove intoxication at the time of driving. There must be other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test. We have explained that,

> [t]o be sure, if the State relies upon the [per se] definition of intoxication, then such proof will normally appear in the form of a chemical test showing the alcohol concentration in a defendant's body *near the time of the offense*. However, a conviction will not necessarily follow from the offer of such a test. First, the trier of fact must still be convinced beyond a reasonable doubt that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath, blood or urine. Second, the jury must still be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a 0.10 % alcohol concentration in his

---

[21] *Id*. at 440; *see also id*. at 449 (Cochran, J., concurring) (noting that the relative probative value of the test depends primarily upon "(1) the degree to which the test result exceeds the legal limit of 0.08% and (2) the amount of time elapsed between driving and the taking of the test. The higher the test result and the shorter the time between driving and testing, the more likely the logical inference is that the defendant had a BAC level at or above 0.08% at the time of driving.").

[22] 210 S.W.3d 637 (Tex. Crim. App. 2006).

[23] *Id.* at 642.

body *at the time of the offense*.[24]

Other evidence that would logically raise an inference that the defendant was intoxicated at the time of driving as well as at the time of the BAC test includes, *inter alia*, erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking–in short, any and all of the usual indicia of intoxication.[25]

In sum, the evidence is sufficient to support a jury charge on the "per se" theory of intoxication if it includes either (1) expert testimony of retrograde extrapolation, or (2) other evidence of intoxication that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test.

2. *In this case, the evidence was sufficient to support a jury charge on the "per se" theory of intoxication*. Applying the law to this case, we find that appellant's BAC-test result–which indicated a 0.10 BAC approximately 80 minutes after he drove–was probative and admissible

_____

[24] *Bagheri v. State*, 119 S.W.3d 755, 761 (Tex. Crim. App. 2003) (quoting *Forte v. State*, 707 S.W.2d 89, 94-95 (Tex. Crim. App. 1986) (emphasis in original)).

[25] *See Stewart*, 129 S.W.3d at 96-97 ("The breath test results–along with Officer Rodriguez's testimony and the videotape of Stewart–were probative evidence of her intoxication. The breath test results might not have been conclusive proof that Stewart was intoxicated at the time that she drove, but that is of no consequence."); *Mechler*, 153 S.W.3d at 441 ("intoxilyzer results are evidence of intoxication under both intoxication definitions and the proof under each definition is not mutually exclusive. . . clearly, a test showing that blood had a .10 alcohol concentration is probative evidence of a loss of faculties. Conversely, evidence of his failure to pass field sobriety tests immediately after driving his vehicle tends to make it more probable that the failed blood test or breath test taken an hour later accurately reflect the driver's condition at the time of the offense.") (citing *Mechler*, 123 S.W.3d at 456).

to prove his BAC level while he drove, even absent extrapolation testimony.  Appellant

attempts to distinguish this case from our prior cases by arguing that, in those cases, there was

other evidence to support an instruction on the per se definition, such as erratic driving,

physical symptoms of intoxication, admission of alcohol consumption by the defendant, and

failed field sobriety tests.  He contends that in this case, there was no such additional

supporting evidence.  The record does not support appellant's contention.  The jury heard

evidence of

* appellant's driving almost 20 m.p.h. over the speed limit prior to the accident;

* his failure to see and avoid hitting an 18-wheel tractor-trailer that was turning a substantial distance ahead of him;

* his failure to brake until less than one second before impact;[26]

* his unconsciousness immediately after the accident, which precluded any inference that he drank alcohol and became intoxicated after he was driving;

* the odor of alcohol in his blood shortly after the accident;

* the presence of vodka bottle caps (but no bottles) in the patrol car;

* his belligerence at the hospital and other behavior consistent with intoxication;

---

[26] *See Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009) ("Looking at the evidence in the light most favorable to the prosecution, a rational fact-finder was permitted to conclude that Sierra was driving recklessly or dangerously while intoxicated.  There was no evidence that Sierra attempted to brake before the impact, even though he told Officer Ertons that he was 247 feet away from the car when he first spotted it.  Based on Sierra's account, the evidence showed that a normal, undistracted person, who was driving at the thirty-five mile-per-hour speed limit, would have stopped seventy-one feet before the car.  Therefore, Sierra could have avoided the collision, but he failed to do so, even though he had ample opportunity to stop before hitting the car.")

\*        his "obviously intoxicated" appearance at the emergency room, according to ER personnel.

Appellant's contention that the jury would have had to rely only on the unextrapolated BAC-test result in support of a per se intoxication conviction is inaccurate. We conclude that this evidence, together with the BAC-test result, supported submission of a charge on per se intoxication and conviction on that theory.

Appellant also argues that, because the trial judge admitted the BAC-test result with a limiting instruction, the jury was precluded from considering the BAC-test result as probative evidence of per se intoxication. He contends that "[t]he limiting instruction and the jury charge were contradictory instructions that were erroneous, when given together, and confusing."[27]  Appellant is correct that the limiting instruction was confusing, but it did not prevent the jury from considering whether appellant was "per se" intoxicated at the time he was driving.

## B.    The limiting instruction.

Rule 105 of the Texas Rules of Evidence provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."[28]  Thus, when a statute, rule of evidence, or judicial precedent stipulates that certain evidence may be admissible for a specific, limited purpose,

---

[27] Appellant's Brief at 3.

[28] TEX. R. EVID. 105(a).

the jury should be instructed as to that purpose and told not to consider that evidence for any other, improper, purpose. There is, however, no Texas statute, rule of evidence, or judicial precedent that limits the jury's consideration of an otherwise admissible BAC-test result. Our decisions in *Mata*, *Stewart*, *Mechler*, and *Gigliobianco* state the opposite. A BAC-test result that is taken within a reasonable period of time after the defendant has been driving and shows that he was above the legal limit of intoxication at the time of taking the test is probative–although not conclusive–of per se intoxication at the time of driving. The BAC test showing intoxication at the time of the test must be supported by some other evidence that indicates intoxication at the time of driving as well. But that judicially imposed requirement deals with the sufficiency of the evidence, not the admissibility or use of evidence. Absent a statute that requires the jury to be instructed about the sufficiency of certain evidence,[29] jurors are not instructed on such issues or limited in their consideration of evidence otherwise fully admissible. "'Texas courts are forbidden from instructing the jury on any presumption or evidentiary-sufficiency rule that does not have a statutory basis.'"[30] Such an instruction is

---

[29] *See, e.g.*, TEX. CODE CRIM. PROC. art. 38.14 (Testimony of Accomplice).

[30] *Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003). We explained: both appellate and trial courts may measure the sufficiency of evidence by resort to a judicial presumption, but the jury cannot be told of that presumption or rule. For example, the presumption of an intent to commit theft arises from the nonconsensual nighttime entry of a home or building. But an instruction to the jury on this legal "presumption" is an improper comment on the weight of the evidence.
 *Id.* at 800 (footnote omitted).

an improper comment on the weight of the evidence.[31]

In this case, the trial judge instructed the jury that it could consider appellant's BAC-test result "for the limited purpose of showing that the individual tested had ingested alcohol only at some point before the time of the test." Obviously, the BAC-test result was relevant to show that appellant had ingested enough alcohol at some point before the time of the test to become intoxicated by the time of the test. But it was also probative to show that he was intoxicated at the time he was driving, even though it was not sufficient by itself to prove intoxication at the time of driving. Thus, the instruction was misleading as well as an improper comment on the weight of the evidence.

But the judge's limiting instruction did not prevent the jury from considering the BAC-test result as evidence of his per se intoxication at the time of driving; it told the jury that it could be considered probative of alcohol ingestion or intoxication "only at some point before the time of the test," not necessarily at the time of driving. In his argument, appellant contends that the jury could "only consider[] the blood test to establish alcohol consumption."[32] That is not what the limiting instruction says.[33] The word "only" modifies

---

[31] *Id*. at 800.

[32] Appellant's Brief at 7.

[33] From the colloquies quoted in the text and footnote 7, that may have been what the trial judge intended to say, but that is not what he did say. And we must presume that the jury followed the instruction that was actually given. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented.").

the "when" phrase–"at some point before the time of the test"–not the "what" phrase–"had ingested alcohol." That is, appellant's argument is premised upon the mistaken belief that the trial judge's limiting instruction told the jury that it could consider the BAC evidence "for the limited purpose of showing that the individual tested had *only* ingested alcohol at some point before the time of the test." Appellant mentally misplaced the modifier.[34] The court of appeals followed in his wake, and it, too, may have accepted appellant's misreading of the instruction.[35]

Technically, the trial judge's limiting instruction is not legally incorrect: a BAC test does not tell us when a person became intoxicated or that the person was necessarily intoxicated at the time of driving. For that, the jury needs some additional evidence; in this case, there was ample additional evidence to prove that appellant was per se intoxicated at the time of the test *and* at the time he drove. But the instruction was an improper comment on the weight of the evidence, and it was misleading because it was susceptible to

---

[34] We are reminded that modifiers, especially those like "only," are tricky little fellows which are too frequently left dangling or misplaced. *See* http://www.ehow.com/how_2149381_fix-dangling-misplaced-modifiers.html ("Watch out for words like 'only,' 'almost,' 'even' and 'nearly,' because these modifiers are frequently misplaced. Make sure they appear directly before what they describe. Take a look at this sentence: 'Annette only ate two cookies.' The modifier, 'only,' appears before 'ate,' which suggests that the writer expected Annette to devour, crush or demolish two cookies– not just eat them. Logic tells us that the writer intended to clarify the number of cookies Annette ate. Fixing a misplaced modifier is easy--just move it before what it modifies: 'Annette ate only two cookies.'").

[35] *See Hirsch*, 276 S.W.3d at 591. But the court of appeals, perhaps aware of appellant's misunderstanding and misplacement of the modifier, stated, "[t]o the extent that the instruction said the test could only show appellant ingested alcohol, the instruction was erroneous." *Id.*

misunderstanding.

In sum, the trial judge properly instructed the jury on the per se intoxication theory because there was sufficient evidence, in addition to the 0.10 BAC-test result obtained 80 minutes after the accident, to conclude that appellant was per se intoxicated at the time of the accident. The trial judge erred in giving any limiting instruction, but that instruction simply informed the jury that, by itself, the test result did not prove more than that appellant ingested alcohol (and became intoxicated) "only at some time before the time of the test." This instruction was improper and misleading, but it did not prohibit the jury from using the BAC-test result, along with the rest of the evidence, to conclude that appellant was per se intoxicated at the time he was driving.[36]

We therefore affirm the judgment of the court of appeals.

Delivered: February 10, 2010

Publish

---

[36] The State additionally argues that, during its direct examination of a nurse who treated appellant at the hospital, it offered appellant's medical records–which contained the BAC-test result–into evidence with no limiting instruction, thereby permitting the jury to consider the BAC-test result for all purposes. However, the record does not fully support this position: In a conference outside the jury's presence before the records were offered, the prosecutor acknowledged that some of the material contained therein, "like the blood test results," were not yet admissible. He agreed not to "publish them to the jury at [that] time or mention the blood results" until the judge had decided the admissibility of the BAC-test result. Thus, when the prosecutor later offered the records into evidence, the judge admitted them "[s]ubject to the previous discussion outside the presence of the jury." The Ben Taub chemist later testified to the BAC-test results as they were contained in the written report. It was at this time that the trial judge gave his limiting instruction. We think, therefore, that the judge intended that the admissibility of the written and oral evidence of the BAC-test result be considered together and that the limiting instruction apply to both.