# NO. 12-21-00060-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BILLY TREMAYNE CASEL, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Billy Tremayne Casel appeals his conviction for driving while intoxicated, third or more. He presents six issues on appeal. We modify and affirm as modified.

### BACKGROUND

Appellant was indicted for driving while intoxicated, third or more, alleged to have been committed on March 2, 2019 in Smith County, Texas.[1] It was further alleged in the indictment that Appellant had previously been convicted of two prior felonies under the habitual offender statute.[2] Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury found Appellant "guilty" as charged. Appellant elected to have the trial court assess punishment. At the punishment phase of trial, Appellant pleaded "true" to the enhancement paragraphs. The State filed a motion to cumulate Appellant's sentence with his twenty-year sentence for evading arrest that arose from the same incident. At the conclusion of the punishment phase, the trial court assessed punishment at fifty-years imprisonment. The trial court also granted the State's motion to cumulate sentences. This appeal followed.

---

[1] *See* TEX. PENAL CODE ANN. § 49.09(b) (West Supp. 2021).

[2] *See id*. § 12.42(d) (West 2019).

In his first issue, Appellant contends the evidence is insufficient to support his conviction. Specifically, he urges the State failed to prove that he was operating the vehicle in question and that he was intoxicated at the time of the alleged operation.

**Standard of Review and Applicable Law**

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (stating that role of fact finder is "as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence"). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Rivera v. State*, 507 S.W.3d 844, 853 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see Bohannan*, 546 S.W.3d at 178 (stating that fact finder has duty to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Bohannan*, 546 S.W.3d at 178; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We resolve any inconsistences in the evidence in favor of the verdict. *Bohannan*, 546 S.W.3d at 178; *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). A criminal conviction may be based on circumstantial evidence. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

To satisfy the elements of DWI, the State was required to prove that Appellant operated a motor vehicle in a public place while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2021). "Intoxicated" is defined as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (West 2011). For the evidence to be sufficient to support a conviction for DWI, a "temporal link" must exist between the defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). This temporal link may be established by circumstantial evidence. *Id.* (noting that circumstantial evidence is as probative as direct evidence in establishing guilt).

## Evidence at Trial

Officer Gregory McCullough of the Tyler Police Department testified that he responded to a welfare call by a concerned citizen regarding a possible intoxicated driver. When he arrived, Officer McCullough observed the suspected vehicle in the parking lot, a red Dodge Charger. The vehicle's driver backed up and moved forward several times, as if trying to get into a parking spot appropriately. According to McCullough, the vehicle moved approximately "a foot and a half" back and forward each time even though the vehicle was already lined up with the parking spot. Appellant then exited the driver's seat. McCullough's dash cam video, which was admitted into evidence, depicted the vehicle moving in the parking spot. The video also showed Appellant. While several feet from the vehicle, McCullough smelled alcohol coming from the vehicle.

When making contact with Appellant, a struggle ensued after Appellant resisted arrest and refused to comply with officer requests. During the struggle, McCullough smelled marijuana on Appellant. According to Officer McCullough, no field sobriety tests were performed because Appellant had fallen to the ground during the struggle. The officers wanted to make sure Appellant was not injured. Appellant was evaluated by emergency medical personnel. McCullough explained that field sobriety test results would be invalid if Appellant suffered some sort of injury. Officer McCullough testified that there was damage to the front right of Appellant's vehicle, consistent with striking a curb or involvement in some sort of accident. During the search of the vehicle, officers found an open bottle of beer. They also

3

found a baggie of marijuana in Appellant's sweater. The officers asked for a blood sample at the hospital, and Appellant refused. Therefore, they obtained a warrant for a blood draw.

Officer David Russ of the Tyler Police Department testified that he was dispatched to Family Dollar on Loop 323 on March 2, 2019. The call was initially in response to a suspicious vehicle that was involved in a minor crash in a parking lot. He believed the vehicle had struck a curb. According to Officer Russ, the 911 caller said the vehicle had been stuck in a ditch, and the caller saw open containers in the vehicle and smelled marijuana. When he arrived on scene, Officer Russ noted "fresh front end damage" on the car. He further observed the vehicle in motion, as if it was attempting to back into a parking spot. Appellant then stepped out of the driver's seat of the vehicle. According to Officer Russ, Appellant smelled like alcohol. Appellant was transported to the hospital where he was examined for injuries. When Appellant refused to provide a blood sample, Officer Russ began the process of obtaining a blood sample warrant and completed a probable cause affidavit. A judge signed the warrant approximately two hours after the initial dispatch call. Appellant continued to be uncooperative at the hospital even after the warrant's issuance. A nurse with the Smith County Sheriff's Office was eventually able to obtain the blood draw approximately four hours after initial dispatch.

A recording of the 911 call was admitted into evidence and played for the jury. According to the caller, a red Charger skidded off the roadway into the ditch and pulled into the Family Dollar parking lot. The caller reported open containers in the car and stated that the driver appeared intoxicated. The caller further claimed that the driver smelled like what he believed to be marijuana. The caller stated that he was no longer in the parking lot because the driver cursed at him. Therefore, he called authorities and left. The caller did not testify at trial.

Karen Shumate of the Tyler crime lab testified that the blood draw requested analysis for alcohol and volatiles content. She further testified that she began the analysis on May 3, 2019. The test result showed blood alcohol concentration of 0.160. The standard for intoxication in Texas is 0.08.

**Operating a Motor Vehicle**

Appellant argues the State failed to prove he was operating a vehicle. The Penal Code does not define "operate" or "operating." To assess the sufficiency of the evidence to support this element of the offense of DWI, the Court of Criminal Appeals has defined "operate" as "taking 'action to affect the function of [a] vehicle in a manner that would enable the vehicle's

4

use.'" ***Kirsch v. State***, 357 S.W.3d 645, 648 (Tex. Crim. App. 2012) (quoting ***Denton v. State***, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). Courts consider the totality of the circumstances in determining whether sufficient evidence supports a conclusion that the defendant operated the vehicle. ***Denton***, 911 S.W.2d at 390; ***Dansby v. State***, 530 S.W.3d 213, 228 (Tex. App.—Tyler 2017, pet. ref'd) (concluding that evidence was sufficient to support conviction when officer found unoccupied truck running in restaurant parking lot and defendant, who was inside restaurant, admitted he had driven vehicle from nearby bar to his house before driving to restaurant).

Courts interpret "operating" a motor vehicle "very broadly." ***Priego v. State***, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting ***Smith v. State***, 401 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd)). "[W]hile driving does involve operation, operation does not necessarily involve driving." ***Denton***, 911 S.W.2d at 389; ***Priego***, 457 S.W.3d at 569 (stating that "any action that is more than mere preparation toward operating the vehicle" falls under definition of "operating" set out in ***Denton*** and that "[t]he action taken to affect the functioning of the vehicle 'need not succeed in causing the vehicle to function for the person to be operating it'") (quoting ***Smith***, 401 S.W.3d at 919, and ***Strong v. State***, 87 S.W.3d 206, 215 (Tex. App.—Dallas 2002, pet. ref'd), *abrogated on other grounds by* ***Pfeiffer v. State***, 363 S.W.3d 594 (Tex. Crim. App. 2012)). Courts have therefore upheld DWI convictions in situations in which the defendant was not actually driving the vehicle. ***Priego***, 457 S.W.3d at 569.

Appellant contends the State did not present sufficient evidence that he operated a vehicle in a public place. He contends that "it is not apparent the vehicle was functional." He further urges that Officer Russ was unaware how long the vehicle had been in the parking lot. However, Appellant ignores the evidence that both Officers Russ and McCullough observed the vehicle being moved in the parking space by Appellant when they arrived on scene. And this movement was captured by Officer McCullough's dash cam video. Viewing the evidence in the light most favorable to the verdict, the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant operated the vehicle.

**Blood-Alcohol Test Results**

Appellant further argues that the State failed to prove that the blood alcohol test result was valid for the time period in which appellant was driving because the blood draw occurred

approximately four hours after Appellant was arrested, and the State failed to offer evidence of a retrograde extrapolation concerning the blood-alcohol test results.

As stated above, to support a conviction for DWI, a "temporal link" must exist between the defendant's intoxication and his driving. *Kuciemba*, 310 S.W.3d at 462. The Penal Code defines "intoxicated" in two ways: (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, among other things, into the body; or (2) having an alcohol concentration of 0.08 or more. TEX. PENAL CODE ANN. § 49.01(2); *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). "The first definition is the 'impairment' theory, while the second is the 'per se' theory," and these theories are not mutually exclusive. *Kirsch*, 306 S.W.3d at 743. In *Kirsch*, the Court of Criminal Appeals stated that "BAC-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication." *Id*. at 745. However, a blood-alcohol test result, without more, is not sufficient to prove intoxication at the time of driving. *Id*. "There must be other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test." *Id*. "Other evidence" indicating that a defendant was intoxicated at the time of driving—as well as at the time of the blood draw—includes erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning when and how much he had been drinking, "in short, any and all of the usual indicia of intoxication." *Id*.

Here, the jury charge instructed the jury on both theories of intoxication—the impairment theory and the per se theory. On appeal, Appellant argues that the blood-alcohol test results constituted no evidence of his blood-alcohol level at the time that he was driving his vehicle because the blood draw occurred approximately four hours after his arrest and the State did not offer expert testimony concerning retrograde extrapolation. As the Court of Criminal Appeals held in *Kirsch*, however, blood-alcohol test results "are often highly probative to prove both per se and impairment intoxication" even when the State does not present expert testimony on retrograde extrapolation. *See id*. The blood-alcohol test result by itself is not sufficient to prove intoxication at the time of driving, but it may be considered along with other indicia of intoxication. *See id*.

6

In addition to Appellant's blood-alcohol test result, which reflected Appellant's blood-alcohol level at the time of the blood draw was 0.160, the State presented other indicia of intoxication. Specifically, the State presented the 911 call, in which the caller described Appellant's vehicle and reported that the driver had driven into a ditch, had open containers in his vehicle, and smelled of marijuana. Upon encountering Appellant in the parking lot, both Officers Russ and McCullough testified that Appellant smelled of alcohol and marijuana. In addition, they found an open container of beer in his vehicle and a baggie of marijuana in his jacket. Both officers testified that they believed Appellant was intoxicated. *See **Zill v. State***, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (listing factors constituting evidence of intoxication—including "slurred speech, bloodshot or glassy eyes, unsteady balance, a 'staggering gait,' and the odor of alcohol on the person or on her breath"—and stating that "[t]he testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict").

Because the blood-alcohol test result, even without expert testimony on retrograde extrapolation, is probative of intoxication and the State presented other evidence indicating that Appellant was intoxicated at the time he was driving, we conclude that, when viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that Appellant was intoxicated at the time that he operated his vehicle. *See **Kennemur v. State***, 280 S.W.3d 305, 314–15 (Tex. App.—Amarillo 2008, pet. ref'd) (considering blood-alcohol test result among other factors indicating intoxication even though blood draw occurred seven hours after defendant was in car accident and stating that test result "tend[ed] to make it more probable that he was intoxicated at the time of the collision because [it] provided evidence that he had introduced alcohol into the body prior to the accident" and no evidence in record indicated that defendant consumed alcohol after leaving bar or following car accident).

We overrule Appellant's first issue.

## ADMISSION OF EVIDENCE

In his second issue, Appellant argues the trial court abused its discretion in admitting the 911 call into evidence. He urges that portions of the 911 call constitute hearsay and are irrelevant.

7

When the State offered the 911 call into evidence, Appellant's counsel made the following objection:

> And, Judge, I will just simply reiterate what I had – my objections that I made prior, and that would be as to relevance, number one, and any hearsay contents therein that are not within either exemptions or exceptions to that rule.

Counsel, however, failed to identify the specific statements in the recording that were objectionable or ask for a limiting instruction when the trial court overruled his objection. Thus, even if we assume that portions of the recording were inadmissible, appellant's objection at trial was insufficiently specific to preserve error for appellate review.[3] *See* **Whitaker v. State**, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (to preserve complaint on appeal, objecting party bears burden to specifically point out which portions are inadmissible when exhibit contains both admissible and inadmissible evidence); **Willover v. State**, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002) (explaining that trial court may admit evidence that contains admissible and inadmissible content and "losing party ... will be made to suffer on appeal the consequences of his insufficiently specific offer or objection"); *see also* TEX. R. APP. P. 33.1(a) (describing requirements for preservation of error). Therefore, we overrule Appellant's second issue.

### IMPROPER JURY ARGUMENT

In his third issue, Appellant argues the State made an impermissible jury argument resulting in reversible error. Specifically, he argues "the prosecutor struck at [Appellant] over the shoulders of defense counsel."

**Standard of Review and Applicable Law**

We review a claim of improper jury argument for an abuse of discretion. **Turner v. State**, No. 12-09-00264-CR, 2010 WL 2638146, at *1 (Tex. App.—Tyler June 30, 2010, pet. ref'd) (mem. op., not designated for publication). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. **Id.** Further, the trial court's decision will be upheld on appeal if it is correct on any theory of law applicable to the case. **Id.**

Jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and

---

[3] We note that Appellant likewise fails to specifically identify the inadmissible portions on appeal.

(4) pleas for law enforcement. ***Landry v. State***, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871, 107 S. Ct. 242, 93 L. Ed. 2d 167 (1986). When the State's jury argument exceeds the permissible bounds, it will not constitute reversible error unless, in light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused in the proceedings. ***Wesbrook v. State***, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort by the State to deprive an appellant of a fair and impartial trial. ***Id.*** In most instances, an instruction to disregard the remarks will cure the error. ***Id.*** Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. ***Id.***

To preserve error on improper jury argument, a defendant must object to the prosecutor's argument and obtain an adverse ruling. *See **Archie v. State***, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Generally, this requires a timely and specific objection, a request for an instruction to disregard the improper argument, and a motion for mistrial. *See **id.*** This sequence is not essential, as a request for an instruction to disregard is required only if said instruction would cure the error. *See **id.*** However, a motion for mistrial is an essential prerequisite to preserving the complaint for appeal. *See **id.***

## Analysis

Appellant argues that the prosecutor "struck at [Appellant] over his counsel's shoulders" when he made arguments that insulted defense counsel. Specifically, he complains about the following statements:

> It's hard to listen to that because what you just heard is every page from the defense attorney playbook of: My guy is dead to rights, so what do I do now? That's it. Everything. What's the first thing you do? Well, let's confuse you on the law. For -- for the defense attorney to say, "There's nothing about common sense in the jury charge," do you know what he's telling you? Then don't use your common sense. Why? Because common sense will find his guy guilty.

> And so then we make this -- and I've seen it before -- this cute little story about, "Well, we're reasonable people if you have a doubt; hence, there's a reasonable doubt."

> . . .

> But, again, that is your classic playbook of: My guy is dead to rights, so I've got to throw something out there.

> . . .

9

And then, right out of the defense attorney playbook which is going to be, "You know, I have no problem with the police." When the defense starts with, "I have no problem with the police," that means they do.

Appellant's trial counsel failed to object to the argument and failed to move for mistrial. Thus, he failed to preserve his complaint for appeal. *See id.*

But even had Appellant preserved error, any improper argument would be nonconstitutional error subject to a harm analysis pursuant to appellate Rule 44.2(b). TEX. R. APP. P. 44.2(b); *Turner*, 2010 WL 2638146, at *1. An error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In *Mosely v. State*, the Court of Criminal Appeals considered three factors in evaluating improper arguments: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

Here, the severity of the alleged misconduct was mild because the comments do not directly accuse the defense attorney of lying, and the comments do not suggest any evidence was manufactured. *See id.* at 260. At most, the comments indicate the defense may be attempting to distort the jury's view of the evidence through clever argument. Such a comment does not inject new facts into the record, and the jury is in the position to evaluate the truth of the prosecutor's assertions. While no curative action was taken, as discussed above, the evidence supporting Appellant's guilt was substantial. *See id.*; *Gibson v. State*, No. 12-18-00314-CR, 2019 WL 7373840, at *10 (Tex. App.—Tyler Dec. 31, 2019, no pet.) (mem. op., not designated for publication). Under these circumstances, we conclude that the State's argument was not so offensive or flagrant as to render the trial fundamentally unfair. *See Mosley*, 983 S.W.3d at 259; *see also Wesbrook*, 29 S.W.3d at 115. We overrule Appellant's third issue.

## CRUEL AND UNUSUAL PUNISHMENT

In his fourth issue, Appellant contends that the fifty-year sentence imposed upon him, stacked with his twenty-year sentence for evading arrest, constitutes cruel and unusual

punishment. We first note that the Court of Criminal Appeals has held that an order cumulating sentences is not cruel and unusual punishment per se. *See Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984).

Furthermore, as Appellant concedes in his brief, he made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); *see also* TEX. R. APP. P. 33.1; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] ... it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."). But even despite Appellant's failure to preserve error, we conclude that the sentence about which he complains does not constitute cruel and unusual punishment.

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.–Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.–Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In the case at hand, Appellant was convicted of a third-degree felony, driving while intoxicated, third or more, which was enhanced by two prior felony convictions, the punishment range for which is between twenty-five to ninety-nine years or life in prison. *See* TEX. PENAL CODE ANN. §§ 12.42(d) (West 2019); 49.09(b)(2)(A) (West Supp. 2021). Here, the sentence imposed by the trial court falls within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three-part test originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by

Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.–Texarkana 1999, no pet.).

We first must determine whether Appellant's sentence is grossly disproportionate. In so doing, we are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In *Rummel*, the Supreme Court addressed the proportionality claim of an appellant who received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. A life sentence was imposed because the appellant also had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 266, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at hand, the offense committed by Appellant—driving while intoxicated, third or more—is at least as serious as the combination of offenses committed by the appellant in *Rummel*, while Appellant's combined seventy-year sentence is less severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* was not unconstitutionally disproportionate, then neither is the sentence assessed against Appellant. Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining elements of the *Solem* test. Appellant's fourth issue is overruled.

### EMERGENCY MANAGEMENT SERVICES TRAUMA FEE

In his fifth issue, Appellant argues that the $100 Emergency Medical Services (EMS) trauma fee assessed as part of his court costs is unconstitutional and should be deleted from the judgment. Appellant argues that the statutory provision that provides for the EMS trauma fee is unconstitutional because the funds collected are not allocated for legitimate criminal justice

12

purposes, thus violating the separation of powers clause of the Texas Constitution. *See* TEX. CONST. art. II, § 1.

Effective January 1, 2020, the Legislature amended Article 102.0185 of the Texas Code of Criminal Procedure, entitled "Fine for Intoxication Convictions: Emergency Medical Services, Trauma Facilities, and Trauma Care Systems." The statute provides that upon conviction of an offense under Chapter 49 of the penal code, except for Sections 49.02 and 49.031, the defendant "shall" pay a $100 fine. TEX. CODE CRIM. PROC. ANN. art 102.0185 (West Supp. 2021). Prior to the amendment, Article 102.0185 was entitled "Additional Costs Attendant to Intoxication Convictions: Emergency Medical Services, Trauma Facilities, and Trauma Care Systems." *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 2.38, 2019 Tex. Gen. Laws 3981, 4005-06. The Legislature substituted "fine" for "costs" throughout the statute. The amendment applies only to an offense committed on or after the effective date, which is January 1, 2020, and the former law applies to offenses committed before January 1, 2020. *Id.* at 4035. Because Appellant committed his offense in March 2019, the former law applies.

A facial challenge is an attack on the statute itself as opposed to a particular application. *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). It is a challenge to the statute in all its applications. *Id.* Appellant's facial constitutional challenge is grounded on separation of powers between the branches of government, which the Texas Constitution expressly guarantees. TEX. CONST art. II, § 1. "One way the Separation of Powers provision is violated is when one branch of government assumes or is delegated a power more properly attached to another branch." *Salinas*, 523 S.W.3d at 106–07 (internal quotation and citation removed). Although courts may not operate as tax gatherers, which is a function reserved to the executive branch, "courts may collect fees in criminal cases as part of its judicial function 'if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimately criminal justice purposes.'" *Casas v. State*, 524 S.W.3d 921, 926 (Tex. App.—Fort Worth 2017, no pet.) (quoting *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015)).

The version of the statute authorizing the cost in effect at the time imposed an additional $100 court cost upon conviction for an intoxication offense to be allocated for emergency-medical services, trauma facilities, and trauma-care systems. Act of June 1, 2003, 78th Leg., R.S., ch. 1213, § 4, 2003 Tex. Sess. Law Serv. Ch. 1213, *amended by* Act of May 5, 2011, 82nd

Leg., R.S., ch. 91, § 6.007, 2011 Tex. Sess. Law Serv. Ch. 91. This statute was again amended in 2019. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 2.38, 2019 Tex. Sess. Law. Serv. Ch. 1352, current version at TEX. CODE CRIM. PROC. ANN. art. 102.0185. Attendant statutes direct the comptroller to deposit the monies collected in an account in the general revenue fund established for the same services, facilities, and systems. *Id.*; *see also* TEX. HEALTH & SAFETY CODE ANN.§ 773.006(a) (West 2017). The commissioner of state health services is directed to use the monies deposited in the reserved account "to fund county and regional emergency medical services, designated trauma facilities, and trauma care systems" in accordance with certain statutory percentages and to maintain a $500,000 reserve. TEX. HEALTH & SAFETY CODE ANN.§ 773.122(a)–(f) (West 2017).

Appellant urges us to follow the Fort Worth and Texarkana Courts of Appeals, which relied on *Salinas* and held that the prior version of Article 102.0185 of the Code of Criminal Procedure, directing the collection of the $100 "EMS Trauma Fund" cost, is unconstitutional. *See Casas*, 524 S.W.3d at 927; *see also Waddell v. State*, No. 02-14-00372-CR, 2017 WL 4819373, at *1 (Tex. App.—Fort Worth Oct. 26, 2017, no pet.) (mem. op., not designated for publication); *Robinson v. State*, No. 06-17-00082-CR, 2017 WL 4655107, at *4 (Tex. App.— Texarkana Oct. 18, 2017, pet. ref'd) (mem. op., not designated for publication). In *Casas*, the Fort Worth Court of Appeals held that the statute was unconstitutional because the Legislature did not explicitly direct that the funds be used for criminal-justice purposes and reasoned that it was insufficient that some of the money collected could ultimately be spent on a legitimate criminal-justice purpose, such as victims of a drunk-driving accident. *Casas*, 524 S.W.3d at 927 (quoting *Salinas*, 523 S.W.3d at 107–109).

We agree with our sister courts of appeals. The former version of Article 102.0185 of the Code of Criminal Procedure is facially unconstitutional because neither the statute nor its attendant statutes explicitly direct that the court cost collected be used for a criminal-justice purpose. *See Casas*, 524 S.W.3d at 927; *Richardson v. State*, 606 S.W.3d 375, 384–85 (Tex. App.—Houston [1st Dist.] 2020), *pet. ref'd*, No. PD-483-20, 2020 WL 6156390 (Tex. Crim. App. Oct. 21, 2020). We sustain Appellant's fifth issue and modify the judgment and bill of costs to delete the $100 EMS trauma fee.

14

## WARRANT FEE

In his sixth issue, Appellant urges the trial court improperly assessed certain court costs in its judgment. Specifically, he argues the trial court improperly assessed a "warrant fee" because he was not arrested pursuant to a warrant.

The bill of costs itemizes the costs imposed, which total $463.50.[4] This includes a $50.00 "warrant fee." It also reflects a $5.00 arrest fee. The Texas Code of Criminal Procedure requires a convicted defendant to pay certain fees to "defray the cost of services provided in the case by a peace officer." TEX. CODE CRIM. PROC. ANN. art. 102.011(a) (West Supp. 2021). Specifically, it requires a defendant to pay $5.00 for an arrest without a warrant and $50.00 for executing or processing an issued arrest warrant, capias, or capias pro fine. *Id.* art. 102.011(a)(1)-(2).

Appellant urges that "[b]ecause no arrest warrants or capiases appear in the record," the warrant fee is not supported by the record. As a result, he asks this Court to delete the warrant fee. We agree that no arrest warrants appear in the record. We have the authority to modify a judgment to make the record speak the truth when we have the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b); *Patterson v. State*, 525 S.W.3d 896, 898 (Tex. App.—Tyler 2017, no pet.). Therefore, we modify the judgment and corresponding bill of costs to delete the warrant fee. We sustain Appellant's sixth issue.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues but sustained his fifth and sixth issues, we *modify* the trial court's judgment and corresponding bill of costs and attached order to withdraw funds to delete the $100 EMS/Trauma Fund fee and delete the $50 warrant fee, leaving a total of $313.50 in costs. We *affirm* the judgment *as modified*.

BRIAN HOYLE
Justice

Opinion delivered April 29, 2022.
*Panel consisted of Worthen, C9.J., Hoyle, J., and Neeley, J.*

---

[4] The trial court's judgment does not reflect the costs assessed in the bill of costs and order to withdraw funds. The judgment only references $50 in costs and a $100 fine.

15

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 29, 2022**

**NO. 12-21-00060-CR**

**BILLY TREMAYNE CASEL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1635-19)

---

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment and corresponding bill of costs and attached order to withdraw funds of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment and corresponding bill of costs and attached order to withdraw funds be **modified** to delete the $100 EMS/Trauma Fund fee and delete the $50 warrant fee, leaving a total of $313.50 in costs of the court below against Appellant; in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*